M‘DONOUGH *vs.* ZACHARIE.

APPEAL FROM THE COURT OF THE FOURTH DISTRICT, THE JUDGE OF THE THIRD PRESIDING.

The condition, on the fulfilment of which depends the right to demand payment of an obligation, must appear, by positive proof, to have been fully performed, before payment can be demanded.

Although the performance of an act has been duly registered, so as to operate legal notice to all persons, it is insufficient notice to a person to whom another is bound to make known the fact of the performance.

This suit was brought for the payment of thirty-seven thousand eight hundred and thirteen dollars, with interest at six per cent, by a seizure and sale of a plantation situated about thirty leagues above the city of New-Orleans, on the right bank of the Mississippi, and fifty-four negroes, in the possession of the defendant.

On the 23d of January, 1818, the plaintiff, by public act, sold this plantation, and thirty of the negroes, to John T. Pemberton, for one hundred and twenty-five thousand dollars, of which twelve thousand dollars were paid at the sale, and for the balance, the vendee executed his ten promissory notes, payable to the order of the vendor, on the last day of March, in each succeeding year, each for the sum of eleven thousand three hundred dollars, with special mortgage for their payment, on the property sold.

On the 27th of March, 1821, Pemberton sold to Joseph Erwin the plantation and fifty-four slaves, including those he had purchased from the plaintiff, with special mortgage for the balance then due the plaintiff, to wit: ninety thousand four hundred dollars.

On the 10th of October, 1821, Erwin sold the property he had thus purchased to Mrs. widow Zacharie, with special mortgage for the balance then due to the plaintiff, to wit: the sum of seventy-nine thousand dollars.

Mrs. Zacharie soon afterwards died; the plantation and slaves were sold at public auction by order of the parish judge, in order to effect a partition among the heirs, and the defendant became the purchaser.

The defendant opposed the order of seizure, averring that he was disquieted in his possession of the premises, by a suit of eviction and the non-performance by plaintiff, of a condition precedent in the obligations which the plaintiff sought to enforce.

The order of seizure which had been obtained was enjoined, and on motion to dissolve the injunction the plaintiff offered security, to which the defendant filed several exceptions.

The court after hearing testimony and argument, decided against the defendant as to the interest claimed, and ordered the injunction to be dissolved, on the plaintiff giving certain security. The defendant appealed.

MATHEWS, J. delivered the opinion of the court.

This action commenced by an order of seizure and sale of certain real estate and slaves, described in the plaintiff's petition, and alleged to be subject to a mortgage made in his favor, &c. The order of seizure was granted on the 10th of May, 1832. To this proceeding the defendant (who is the third possessor) filed his opposition and answer, and obtained an order to suspend and enjoin the order of seizure, until further order of the court.

On these pleadings, and the evidence adduced, the cause was tried in the court below, and judgment being rendered in favor of the plaintiff, the defendant appealed.

The property ordered to be seized, is a plantation and slaves, which were sold by the plaintiff, to John T. Pemberton, in the year 1818. In the notarial act of sale, a special mortgage on the property sold, was stipulated in favor of the seller. Pemberton, afterwards, viz: on the 27th of March, 1821, sold the same property to Joseph Erwin, together with some additional slaves, amounting in all to fifty-four. This sale was also made by public act, and it was stipulated

between the parties, that the purchaser should pay the ba-
lance of the price then owing from Pemberton, to M'Donough,
the original vendor, according to the clauses, stipulations
and agreements contained in the act of sale, by which the
property had been conveyed to Pemberton.  On the 1st of
October, 1821, Erwin sold and conveyed by notarial act, to
Mrs. Zacharie, the mother of the defendant, all the property
which he had acquired by the sale from Pemberton.  In this
act, the balance of the price unpaid to M'Donough, is fixed
at seventy-nine thousand one hundred dollars.  He inter-
vened in this act of sale, and the vendee took on himself the
payment to him, of the sum thus ascertained to be owing on
the original sale, and Erwin was released from his obliga-
tions to the intervenor, which arose out of the contract of the
former with Pemberton.  In this instrument is found a clause
of mortgage on the land and fifty-four slaves, stipulated in
favor of M'Donough, to secure the payment of the balance
of the price owing to him.

Mrs. Zacharie died in 1830, and the property now in dis-
pute was regularly sold by order of the Court of Probates of
the parish wherein it is situated, as a part of her succession.
At the probate sale, the defendant became the purchaser
under an express stipulation, that he should comply with the
conditions, and fulfill the obligations imposed by the three
contracts of sale already recited.  The price agreed to be
paid by Pemberton to M'Donough, was divided into instal-
ments, payable at different times, the whole payment to be
completed on the 31st day of March, 1828.  In order to
come to a just conclusion on the decision of the case, it is
only necessary to ascertain the obligations resulting from the
clauses and stipulations in the original act of sale from the
plaintiff to Pemberton, for all the subsequent acts of sale and
transfer of the property, contain express reference to these
clauses and stipulations.  As we have already seen, the
balance owing at the time Mrs. Zacharie became the pur-
chaser of this property, was seventy-nine thousand one hun-
dred dollars.  This sum was payable in seven equal instal-
ments, of eleven thousand three hundred dollars each, the

first on the 31st of March, 1822, and annually from that period until 1828, when the last became due.

Promissory notes were made by the purchaser for all these instalments, and paraphed *ne varietur* by the notary. They were originally ten in number. Three of them were paid off and fully discharged, previous to the sale to Mrs. Zacharie. The act of sale from M'Donough to Pemberton, contains a stipulation by which the purchaser, in the event of failure of crops, was permitted under certain conditions to retard the payment, by paying interest at the rate of six per cent. per annum, on the sums which should remain unpaid after the time at which they became due; and he agreed to pay interest at this rate, on the five last instalments, to be calculated from the 31st of March, 1823. In relation to these instalments, the act has a clause expressed in the following terms: "*D'apres le certificat du conservateur en cette ville en date de ce jour il y a diverses hypotheques tant general que speciale enregistrées coutre le sieur vendeur, et qui frappent le bien presentement vendu; mais les parties apres avoir pris connaissance et lecture du dit certificat l'ont signé ne varietur, avec du dit notaire et temoin pour icelui, rester annexé aux presentes; et sont expressement convenus entres elles que le sieur vendeur sera tenu de faire degager et liberer le bien presentement vendu de toutes les hypotheques, et d'en justifier au sieur acquereur avant le payement que ce dernier doit faire sur le prix de la presente vente le dernier mars de l'année 1824, a defaut de quoi le dit sieur acquereur sera bien duement authorisé a suspender et refuser tous les payemens qu'il s'est obligé de faire sur le prix de la presente vente a partie de celui de l'année mil huit cent vingt quatre inclusivement.*"

The most important question in the case, arises out of the construction to be given to this clause, and on the weight which should be given to the evidence adduced, to show a compliance on the part of the plaintiff, with the obligations thereby imposed on him. As to the two first of the notes, of which the payment was assumed by the ancestor of the defendant, and by him also according to the conditions of the probate sale, by which he acquired title to the mortgaged

premises, there seems to be no dispute with regard to inter- est which accrued after they were due. Large sums were paid and credited on them at different dates during the life time of Mrs. Zacharie, still, however, leaving a balance owing and due, on which interest must be calculated down to the time when the defendant was interrupted in his possession, by a suit brought against him by the heirs of Belly, the person under whom the plaintiff claimed title to the property, which is the subject of the present dispute. This suit was commenced by service of citation, on the 20th of June, 1832, and has operated as one of the causes suspending the seizure and sale in the present case. The main ground of defence against the proceedings instituted and carried on by the plaintiff, as alleged by the defendant, is a want of compliance on the part of the former, with the stipulations of the clause of the act above cited, a circumstance which he contends exonerates him from the payment of any interest on the last five instalments, which according to the contract of sale between M'Donough and Pemberton, was to commence from the last day of March, 1823. The solidity of this defence depends on the want of evidence to show that the plaintiff has complied with the conditions imposed on him, relating to the mortgages, both general and special, with which the property sold was encumbered at the time of the sale to Pemberton. It is seen by reference to this clause of the contract which relates particularly to the five last instalments, had a right to suspend and refuse all payments which he was bound to make on the price of the property, from the year 1824, inclusively, on failure of the seller to free it from the mortgages which were specified as existing on it, and to give proof of his having done so to the buyer, (*et d'en justifier au sieur acquereur.*)

The record affords proof that these mortgages were all released before the stipulated time, as appears by a certificate of the recorder of mortgages of the office wherein they had been inscribed, and it further appears from the evidence of the cause, that payments were made by Mrs. Zacharie, and imputed to the discharge of the two notes which became

due, one in 1824, and the other in 1825. Twelve thousand dollars were paid on account of principal and interest on the first, and eight thousand nine hundred and eighty-seven dollars on account of the second. The first of these payments was made on the 18th of April, 1829, and the second on the 4th of April, 1830.

The mortgages referred to in the act of sale from M'Donough to Pemberton, were not finally released until the month of April, 1823. Consequently the certificates of non-mortgage, found in the subsequent acts of sale from Pemberton to Erwin, and from the latter to Mrs. Zacharie, which were paid, the one in April 1821, and the other in October of the same year, afford no evidence that the stipulations contained in the clause of the original act, were at that time complied with by the plaintiff. But it is true, as above stated, that these mortgages had been cancelled and eradicated previous to the 1st of April, 1824, the period at which the five last annual instalments of the price of the plantation and slaves commenced falling due. There is, however, no positive proof that this fact was made known either to Mrs. Zacharie or the present defendant, previous to obtaining the order for a seizure and sale of the mortgaged property. The condition on which the vendor was authorised to exact the payment of those instalments, does not appear to have been *fully* performed, for although he had raised the mortgages in proper time, he did not justify to the purchaser, according to the French idiom, that he had performed these acts required on his part, *i. e.* he did not communicate to her evidence to show his fulfilment of the obligations imposed; and until that was done the purchaser was authorised to suspend and refuse payment, in other words she had a right to retain this part of the price, and consequently was not bound to pay interest *ipso facto*, on account of the delay of payment. Admitting that no express proof has been given that knowledge was brought home to the defendant or his ancestor of the eradication of these mortgages, it is still contended that the facts shown by the evidence, raise such a violent presumption of knowledge in both the vendee, Mrs. Zacharie and the appellant, that the

The condition, on the fulfilment of which depends the right to demand payment of an obligation, must appear, by positive proof, to have been fully performed, before payment can be demanded.

latter was rightfully condemned to the payment of interest as adjudged by the District Court. These facts are the release and cancelling of the mortgages in the office of the recorder, and payments having been made of some of the instalments by the vendee, which she was not bound to make except in the event of knowledge, that these mortgages had been released from the property purchased. The fact of cancelling appearing in the same office where the hypothcations were inscribed, it is said ought to produce the same legal effect as the recording does; that is notice to every person, and consequently so far as it operates on the rights and privileges claimed on the part of the defendant in the present instance, he must be presumed to have been conusant of this fact, and also all the other vendees.

What effect this reasoning might produce on our minds if the terms of the clause of the contract which we are now considering, did not embrace two stipulations: First, that the mortgages should be cancelled; and secondly, that the fact of cancelling should be made known to the purchaser, both necessarily to be done by the seller; we deem it unnecessary to declare, as there is no evidence to show that the obligation imposed on him by the latter stipulation has ever been fulfilled. Neither, in our opinion, does the circumstance of partial payments having been made, raise such a presumption of knowledge in the vendees as to dispense the vendor from his obligation to communicate the fact of cancelling before he could enforce these obligations to pay. The payment made was a voluntary act and ought not to be construed so as to injure the rights of the party secured by express agreement. It might have been done under a full confidence of the ability of the obligee to make amends for any damage they might possibly have incurred by their incautious act.

We have said that the delay to make payment of the last four instalments, did not of itself impose an obligation on the purchaser to pay interest in consequence of such delay, as she had a right to refuse payment and retain the amount of these instalments, in consequence of the seller having failed to give notice of the eradications of certain mortgages which

EASTERN DIS.
*March*, 1833.

M'DONOUGH
*vs.*
ZACHARIE.

Although the performance of an act has been duly registered, so as to operate legal notice to all persons, it is insufficient notice to a person to whom another is bound to make known the fact of the performance.

affected the property sold. But an unconditional promise was made to pay interest on this part of the price at the rate of six per cent. per annum, from April 1, 1823, on the principal sum contained in each of the notes given, until by their terms they respectively became due. The privilege granted to the vendee to retain these instalments as stipulated in the clause of the act of sale, so often referred to, was a right to suspend and refuse the payment of this much of the price of the property, and the interest which was agreed to be paid on these notes down to the periods at which they respectively were due, was as much a part of the price as the principal, and the obligation to pay interest from 1823 down to those periods, was as complete, as it was to pay the principal sums; therefore the defendant cannot be exonerated from the payment of the principal, (which is not pretended,) and we can see no reason why he should from the payment of interest, both having been promised in the same unequivocal manner. The application of the doctrine which authorises debtors to anticipate in certain cases the payment of their debts, to the present case is not easily perceived; in truth we dot think that in justice it can be applied, there having been neither an offer to pay, nor payment by anticipation.

According to the best examination which we have been able to make of the facts of the case, and the law applicable to it, we are of opinion that the plaintiff has a right to recover the balance which remains due on the first two instalments assumed by Mrs. Zacharie, with interest from the periods when they respectively become due at the rate of six per cent. per annum, to the time when the defendant was disturbed in his possession by the suit of the heirs of Belly; and also the principal and interest stipulated to be paid on the last five instalments; that is to say, interest on the first of these instalments from April 1, 1823, to April 1, 1824; interest on the second from April 1, 1823, until April 1, 1825; interest on the third from April 1, 1823, until April 1, 1826; on the fourth from April 1, 1823, until April 1, 1827; and on the fifth, interest from April 1, 1823, until April 1, 1828; on all at the rate of six per cent. per annum; deducting the

amount paid and credited on the instalments to which the payments have been imputed.

The result of calculation according to the principles laid down, shows that there is now owing and due to the plaintiff the balance of the price of the property sold, fifty-two thousand and twenty-eight dollars and sixty-three cents. And as the defendant, according to the terms of the probate sale of his mother's succession, is personally bound to pay this amount, judgment must be rendered against him.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be avoided, reversed and annulled; and it is further ordered, adjudged and decreed, that the plaintiff do recover from the defendant the sum of fifty-two thousand and twenty-eight dollars and sixty-three cents; and that the mortgaged property in his possession be seized and sold to satisfy this judgment. But no order of seizure and sale shall be issued until the plaintiff give security as directed in the decree of the District Court, allowing to defendant three judicial days, to commence from the first day of the next term of said court to be holden in the parish of Iberville, on the three first days of the term of that court, in which the mortgages and security aforesaid may be filed; and if no exceptions to said security be filed within that period, or if they be filed and overruled, then the order of seizure and sale as above required, shall be issued, &c., the appellee to pay the costs of this appeal; those of the court below to be borne by the defendant and appellant.