EASTERN . DIS.
July, 1841.

RELF & ZACHARIE *vs.* M'DONOGH,
AND
M'DONOGH *vs.* RELF & ZACHARIE,

CONSOLIDATED CASES.

RELF &
ZACHARIE
.*vs.*
M'DONOGH,
AND
M'DONOGH,
*vs.*
RELF &
ZACHARIE.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

Where persons representing a succession, executed their notes to the creditor *for the original debt due by it and secured by mortgage,* their obligation is in the nature of the *pactum constitutæ pecuniæ,* engaging their *personal liability,* that the debt should be paid within a certain time, or the creditor be at liberty to seek payment according to his original right, on his mortgage.

If the new obligation be for more than was legally or actually due on the original one, the mistake being discovered the *pact* or *new obligation* is void, *pro tanto,* for want of a debt which was the foundation of it.

The recognition of a debt is always to be understood with reference to a *primordial title;* and if the party is *obliged* further, or otherwise than as the primary title imports, on showing the error he will be relieved.

So where R. & Z. being heirs of a succession and administering it as executors, gave their notes to the creditor by original debt and mortgage, who reserved the right to go upon his mortgage if the notes were not punctually paid, and did so after the payment of the first note ; and in which the debt was ascertained by a judgment to be *much less* than the amount for which the *new obligation* were given: *Held,* that there was error for this amount, and the new obligations can have no effect.

*Bullard, J. and Martin, J., dissenting.*—The failure to give notice of the extinguishment of a mortgage, did not forfeit accruing interest ; it only authorized a *suspension* of the payment. Interest still runs in such a case, although not exigible.

If it be the essence of the *pactum constitutæ pecuniæ* that there should be a pre-existing debt, it is only to avoid a donation; but it suffices if the debt, the payment of which is promised, should be due in *foro conscienciæ,* and that there should exist a just subject for payment, although it may be in *foro legis* declared null.

These are cross actions. In the first the plaintiffs, Relf & Zacharie allege and show that on the 1st of July, 1829, they executed to the defendant, M'Donogh, six promissory notes for the entire sum of $74,779 84, payable annually in six years from the time the first became due, to wit : on the 1st April, 1830. These notes were given by the present plaintiffs to liquidate an old debt secured by mortgage, called the " Pemberton debt," due by a plantation and slaves, purchased by

Madame Zacharie in 1821, but which was originally purchased from M'Donogh by John T. Pemberton in 1818; she assumed the payment of Pemberton's notes and took his place. At the time of executing the notes in question, Madame Zacharie was dead and her estate under administration by Relf & Zacharie, as executors, and who were also her heirs. The plantation and slaves were sold at probate sale and her other son, P. F. Theodore Zacharie, became the purchaser. On the 1st July, 1829, M'Donogh presented his account for the balance due on the Pemberton debt by the plantation, including interest up to that date, and to liquidate the same the notes now the object of contestation were given ; M'Donogh at the same time giving a receipt, in which he expressly reserves the right and privilege, if the notes were not punctually paid, to go upon his original Pemberton mortgage to enforce the payment of this debt.

In 1830, the first of these notes for $8987 became due and was paid. The next year the plaintiff's finding the property encumbered by some old mortgages, or from some other cause, declined paying any more of their notes. On the 10th of May, 1832, M'Donogh took out his order of seizure and sale on the Pemberton mortgage, against the plantation and slaves, then in the hands of Theodore Zacharie, as third possessor. He made opposition, suspended the order of seizure, and on the 10th June, 1832, the case was transferred to the *via ordinaria* by the service of citation on the defendant. He set up a defence, principally grounded on the failure of the plaintiff to comply with his stipulations for the release and notification thereof of certain incumbrances or mortgages to Pemberton. The case was finally decided and the whole *Pemberton debt*, due also by the plantation and slaves, liquidated and settled by a final judgment of this court, at the sum of $52,028 63, and which has been paid. See the case in 5 La. Reports, 247.

The plaintiffs now allege their notes were given without cause or consideration and pray that they have judgment for the

amount of the first note which they had paid and that the others be delivered up to them.

RELF &
ZACHARIE
vs.
M'DONOGH,
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

The defendant, M'Donogh, pleaded the general issue.

On the 26th March, 1836, M'Donogh instituted suit against Relf & Zacharie, for a balance due on the five remaining notes, including all interest up to this date, which, after allowing all past credits and payments, according to his calculations, leaves the amount due him, $36,796 22, and for which he prays judgment. This account is made up to March 24th, 1836, and includes as a credit the judgment of $52,028, which he recovered against Theodore Zacharie.

The defendants pleaded the general issue : and they aver that the debt for which the notes sued on, were given had been settled and liquidated by a judgment of the Supreme Court, which judgment had since been paid by J. W. Zacharie, one of said defendants, as evidenced by notarial act and receipt at full, dated the 5th September, 1834, and signed by the plaintiff.

On these pleadings and issues the two cases after being consolidated, were tried by the court. There was judgment in the case of M'Donogh against Relf & Zacharie in favor of the latter; and in the case of Relf & Zacharie against M'Donogh there was judgment that the five remaining notes of plaintiffs be cancelled and annulled. It was admitted that R. Relf, one of the makers of the notes in contestation, was the son-in-law of the deceased Madame Zacharie, by *two marriages*, and natural tutor of the minor children, and represented two portions of her estate ; and that J. W. Zacharie, her son and co-obligor of Relf, represented his own portion ; and that these two persons as executors had the principal management of the affairs of her succession. It was also admitted that the suit against Theodore Zacharie was on her assumption of the Pemberton debt and mortgage as set forth in the record and proceedings of said suit which are in evidence.

The remaining facts of this case are fully stated in the ar-

guments of counsel and in the opinions of the judges which
follow.

Relf &
Zacharie
vs.
M'Donogh,
and
M'Donogh
vs.
Relf &
Zacharie.

The case was originally argued by brief by *Mr. D. Seghers* and *Judge Watts* on the part of the appellees ; and by *Mr. Grymes* for the appellant, M'Donogh.

*D. Seghers*, for the appellees.

On the 1st of July, 1829, M'Donogh entered with J. W. Zacharie and Richard Relf, in their own personal names, into an agreement concerning his claim on Mrs. Zacharie's estate, and took their notes for it. This agreement, with a statement of the claim, and his receipt for their notes, are in evidence, and are marked by the letters A and B. It is to be remarked, that the whole of these documents, as well as the body of all the notes, are in the hand-writing of M'Donogh; and it is clear, therefore, that he was the man who stipulated, and that, consequently, in case of doubt, the stipulation is to be construed against him. *Louisiana Code, article* 1952. But it is believed there can be no doubt about the meaning of the parties to this contract, which is the axis on which the whole case turns.

In or about the year 1830, the testamentary executors of Mrs. Zacharie caused the whole of her estate to be sold by the judgment of the Court of Probates of the parish of Iberville, where her succession was opened ; and at this sale, the plantation and slaves mortgaged to M'Donogh, were sold to Theodore Zacharie, one of the heirs of Mrs. Zacharie, subject to the mortgage of M'Donogh, and with the condition, that the purchaser should bind himself to pay and satisfy the claim of M'Donogh on the succession of Mrs. Zacharie, secured by said mortgage.

From the tenor of the receipt given by M'Donogh to R. Relf and J. W. Zacharie, for their notes, it is clear that M'Donogh reserved to himself the choice of the two remedies, viz: to enforce the payment of either of their notes by bringing a personal action against them, or to disregard *the*

EASTERN DIS.
July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH,
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

arrangement (the receiving of their notes,) as if it had never taken place, and to sue out an order of seizure and sale on the notes of Pemberton, by foreclosing the mortgage against the third possessor of the plantation and slaves.

It is also clear, from the tenor of the same document, that in case of payment by R. Relf and J. W. Zacharie, of their notes, M'Donogh was to give up to them the original notes of Pemberton, and to subrogate them to his mortgage, and to his claim under it. This was the true, the only consideration for their notes. Now, from the spring of 1831, M'Donogh made his selection by suing out an order of seizure and sale on the notes of Pemberton, against the third possessor, Theodore Zacharie, holding him at the same time, personally liable for the debt, in virtue of the conditions on which he had purchased the premises at the probate sale. 3 *Louisiana Reports*, 313.

From this period, the consideration of the notes subscribed by R. Relf and J. W. Zacharie, failed, and it is on that ground they brought their action against M'Donogh for the restitution and cancelling of their notes. M'Donogh having failed in that suit against Theodore Zacharie, and his order of seizure and sale having been quashed, he afterwards brought another suit against the said Theodore Zacharie, as third possessor, and as personally liable, (so as above stated,) and in this latter suit obtained an order of seizure and sale for the amount due him on the notes of Pemberton. This amount, in principal and interest, was finally and contradictorily settled by the judgment of the Supreme Court, on an appeal taken by Theodore Zacharie, of the judgment rendered by the fourth District Court, sitting at Iberville, and by which the order of seizure and sale had been granted. Neither Richard Relf nor James W. Zacharie were parties to this suit; it is, as to them, *res inter alios acta.* The above judgment of the Supreme Court, settling the amount due on the notes of Pemberton, was enforced by M'Donogh, who caused the plantation and slaves mortgaged as aforesaid, to be sold on the writ of seizure

and sale against Theodore Zacharie. At the sheriff's sale, James W. Zacharie became the purchaser of the same, as the last and highest bidder, and as such, paid off, out of the price of his purchase, to M'Donogh, the amount of his judgment. M'Donogh gave him a receipt in full for it, and raised the mortgage by an act passed before H. B. Cenas, notary public, a copy of which act is in evidence and on file in the present suit. Now, it is clear, that by this act, as well as by executing the above judgment, the notes of Pemberton are become extinct, and that, consequently, M'Donogh is in the impossibility to give them up and surrender them to Richard Relf and James W. Zacharie, were they to pay their notes, and he can thus no longer fulfil his part of the contract by delivering them the said notes of Pemberton, as stipulated in the above document [A.] It is idle to talk about collateral security; no such thing was either intended or stipulated by the parties. It is idle to say that Richard Relf and James W. Zacharie had waived the exception pleaded by Theodore Zacharie in his defence against M'Donogh. They did not act in that instrument (A,) as executors; and even in that capacity they would have had no right to waive it: in their own name they had nothing to do with it, and were ignorant of it: but at all events, M'Donogh chose to try the exception with the third possessor, Theodore Zacharie, without calling in either James W. Zacharie or Richard Relf; he did it at his own risk; and now, that the notes of Pemberton are extinct by his own act, and that he can no longer surrender these notes to James W. Zacharie and Richard Relf, and subrogate them to his mortgage and personal claim, which are likewise extinct, he cannot be suffered to recover on their notes, for which he cannot give the intended consideration; these notes are, therefore, null and void, being given without consideration, and must be returned to the drawers, at the cost of M'Donogh.

*Grymes*, for the appellant, M'Donogh, maintained the following points:

Eastern Dis.
*July,* 1841.

RELF &
ZACHARIE
*vs.*
M'DONOGH,
AND
M'DONOGH
*vs.*
RELF &
ZACHARIE.

1st. In order to understand the principles of this case, it is necessary to have a clear statement of the facts: ,

In the present instance there is, in this respect, no difficulty or danger of mistake, they are all in writing, and as follows:

The plaintiff, M'Donogh, on the 23d day of January, 1818, sold to one John T. Pemberton, a tract of land and slaves, situated in the parish of Iberville, and received in payment therefor ($12,000,) twelve thousand dollars in cash, and ten promissory notes of ($11,300,) eleven thousand three hundred dollars each, payable on the last day of March in each year, with a stipulation, that if any of the first six notes were not paid at maturity, they should thereafter bear an interest of six per cent., and that the last five notes should each bear an interest at the same rate, from and after the last day of March, 1823, up to the time they respectively came due; and this was incorporated into, and made a part of the body of the said five notes, and consequently, a part of the price of the land and slaves sold, and a mortgage was reserved to secure the payment of principal and interest.

2d. On the 27th of March, 1821, the said John T. Pemberton sold and conveyed the land and slaves, with an additional number of twenty-four slaves, to Joseph Erwin, who substituted himself in lieu and place of the said John T. Pemberton, and undertook to pay to the plaintiff, M'Donogh, all that was due to him for the original price of the land and slaves, and to secure his performance of the obligation, mortgaged the land and slaves, as well as the additional twenty-four slaves purchased from Pemberton. On the first day of October, 1821, Joseph Erwin sold and conveyed the land and slaves thus purchased from Pemberton, to Mrs. Ann Waters, widow Zacharie, who substituted herself in lieu and place of the said Joseph Erwin, towards the plaintiff, M'Donogh, and M'Donogh intervened in the act, and discharged Erwin, and accepted Mrs. Zacharie as his debtor.

3d. Shortly after this last sale, Mrs. Zacharie died, and left the defendants, Richard Relf and James W. Zacharie, her

EASTERN DIS.
July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH,
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

executors testamentary, who, at the same time, represented three portions of the estate left by her.

4th. On the 1st day of July, 1829, all the notes being then due, and a large portion of the five first still unpaid, and the whole of the five last, and the plaintiff, M'Donogh, entitled to proceed against the succession of Mrs. Zacharie for the whole amount of the price then due, settled and arranged, the account of capital and interest, upon the basis of the stipulations contained in the act of sale to Pemberton, and the obligation contained in the body of the last five notes, with Relf and Zacharie, who asked and obtained from the plaintiff, M'Donogh, a further prolongation of the time of payment, of six years from that date, on their giving their individual notes at one, two, three, four, five, and six years for the amount, with six per cent. interest for the time they had to run, making themselves the principal debtors, and leaving the old notes of Pemberton with the mortgage, as a security for their eventual payment.

5th. The first of the notes so given by Relf and Zacharie, was paid by them at maturity; all the others they refused to pay, and the plaintiff, M'Donogh, is, now, as he ever has been, the holder of them; and for the amount of this first note paid, they received a credit for the full amount, on the note of Pemberton due on the last day of March, 1825.

6th. On the neglect or refusal of the said Relf and Zacharie to pay their notes as they became due, the plaintiff, M'Donogh, resorted to judicial proceedings to obtain payment, and he, in the first instance, resorted to the collateral security, viz: the mortgage and notes of Pemberton; and on the 4th day of June, 1832, he instituted an hypothecary action against the land and slaves in the hands of the third possessor, Philip Felix Theodore Zacharie, to whom the same had been adjudicated by the Court of Probates of the parish of Iberville, for the purpose of partition among the heirs, he being himself a son of the deceased, and one of the co-heirs.

7th. In the prosecution of that action, the arrangement

EASTERN DIS.
July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH,
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

entered into between Relf and Zacharie and the plaintiff, M'Donogh, was not introduced, nor was any reference had to it; the defendant did not offer it, and the plaintiff could not: it was in the possession of Relf and Zacharie, who now produce it, out of the power of the plaintiff, M'Donogh; and if in his power, not competent evidence in a suit between him and the third possessor, who was no party to it, it being purely a personal and individual obligation from Relf and Zacharie to him, and consequently, the judgment of the Supreme Court in that case, had, and can have no effect upon its validity, or the rights of the parties under it.

8th. The judgment of the Supreme Court, in that case, relieved the third possessor from the obligation to pay interest, for reasons solely applicable to the position and rights of the parties to that suit, resulting from the original contract with Pemberton. Nothing else was submitted by the pleadings; nothing else is embraced by the decree. ·

9th. The land and slaves were sold under the decree of the Supreme Court, in 1833, and the defendant, James W. Zacharie, became the purchaser at the sheriff's sale, of the whole, for the price of $52,000, at twelve months credit.

10th. The plaintiff, M'Donogh, brought his suit against Relf and Zacharie, to be paid the balance due on the remaining five notes given by them under the agreement of the 1st of July, 1829, after crediting them with the amount made by the sale of the land and slaves, and the plaintiffs, Relf and Zacharie, brought their suit to compel M'Donogh to cancel and deliver them up. The two cases are consolidated, and form the matter in contestation, which the court is now called upon to decide.

The first, and perhaps the only legal proposition that it is material for the court to consider, is, whether there was a legal and valid consideration for the notes given by Relf and Zacharie, under the arrangement of the 1st of July, 1829. And secondly, has any subsequent circumstance or event taken place which has destroyed that consideration, or which

ought in law or justice to discharge them from the obligation
to pay?

As to the first, they had, in their different capacities of heir, father and tutor of minors, and testamentary executors, a direct and positive interest in the succession they were administering; and consequently, it was an object with them to preserve it from loss or deterioration, which would have been the result of an immediate judicial pursuit in 1829, upon the original mortgage of Pemberton, which was then all due, and payable. This is a good and sufficient interest, and consideration upon which to found a personal promise to pay, clear, palpable, and visible to all parties, and not susceptible of mistake, misapprehension or surprise, nor is any either alleged or proved. The agreement to pay interest, so far as it relates to what had occurred previous to the arrangement of the 1st of July, 1829, is based upon the stipulations in the original act of sale to Pemberton, and the obligation contained in the body of the notes, the interest or compensation for the delay was fair and moderate, and within the protection of the law, and consistent with equity and good conscience, and formed a part of the contract of sale, and the price of the thing sold. With respect to that stipulated to accrue after the 1st July, 1829, the forbearance or delay of six years, in the recovery of the principle, was an ample, legal and equitable consideration.

How have the defendants, Relf and Zacharie, been discharged from this obligation? Their only refuge is in the judgment of the Supreme Court, rendered in the case, and introduced by them in evidence. This can operate no discharge to them; it is evident for the following reasons:

1st. The suit was a proceeding, *in rem*, against the land and slaves, in the hands of Philip F. T. Zacharie, the third possessor, and to which the defendants, Relf and J. W. Zacharie, were no parties.

2d. The obligation of Relf and J. W. Zacharie, in their personal and individual capacities, as it is now sued on, was never involved in, and formed no part of the subject matter of

EASTERN DIS.
July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

that suit, and there is no connection or privity between the personal obligation of Relf and Zacharie, upon which they are now sued, and the obligation imposed on the possessor of the property under the original sale which can make the judgment in the one case re-act upon the other; they depend upon entirely different principles and considerations.

If these reasons, strong and conclusive as we believe them to be, need any thing to support and sustain them, the court, we think, will find abundant and triumphant matter to that effect in the following:

1st. The judgment of the Supreme Court, is founded upon an oversight or neglect, on the part of the plaintiff, M'Donogh, to give notice to his original purchaser, Pemberton, or those claiming under him, of the raising and annulling certain mortgages, which the plaintiff stipulated to have raised in the original act of sale of 1818, to Pemberton. Now, if this was a technical objection which would bar the recovery of interest against the third possessor of the land and slaves, or against the heirs or executors of Mrs. Zacharie, in their representative and subrogated capacities, it is an objection which Relf and Zacharie had a right to waive for a good consideration; it existed in full force on the 1st July, 1829, was as obvious then as it was in 1832, and their contracting the personal obligation, and giving in that capacity the notes now sued, on, is a clear and explicit waiver, so far as they are concerned. The objection was not one founded on conscience, equity, or good faith, it was merely formal and technical, and required no precise or specific consideration for the forbearing to urge or use it.

2d. The use of this technical objection on the part of Philip F. T. Zacharie, and his succeeding in it, has had the effect to increase the succession of Mrs. widow Zacharie, by the whole amount of interest deducted from the claim of the plaintiff, M'Donogh, in his suit, *in rem*, against the mortgaged property, and the present defendants come in for their share of this gain.

Now, if this objection was made by P. F. T. Zacharie in

EASTERN DIS.
July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH,
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

conjunction, or by the counsel, consent or connivance of the present defendants, Relf and J. W. Zacharie, and the success of that defence be a bar to the present action, then they are permitted to use a mere technical or formal matter in one capacity, as heir, &c., to increase their estate, and to use the same judgment rendered in their favor in one capacity to break down and destroy a contract made by them in another capacity, and thus enrich themselves at the expense of good faith, and the solemn obligations of a contract which they do not pretend to say was founded either in fraud, mistake or ignorance, and thus make a mere matter of form applicable to one case, triumph over law, equity and justice, in another and a different case.

If this defence was made by P. F. T. Zacharie alone, without the knowledge, consent or connivance of the present defendants, then the parties remain as they were, the judgment is good for him, *quo ad* his interest in the succession of his mother, and he has a right to profit by it; but if the other parties attempt to do so at our expense, law, justice and equity, requires that the personal obligation they have contracted, should interpose and prevent the consummation of a legal fraud.

3d. At the sale made of the mortgaged property, after the final judgment of the Supreme Court, James W. Zacharie, one of the defendants, became the purchaser of all the mortgaged property, for the price and sum of fifty-two thousand dollars, at twelve months credit, not much more than one third of the price paid by his mother. Under such circumstances, to release him from a personal obligation, contracted in good faith on the part of the plaintiff, for a good consideration on his part, without one particle of proof to taint its purity or justice, in any view or shape, would be to hold out a premium to men to enrich themselves at the expense of all that is valuable in the law of contracts.

*Judge Watts*, for the appellees in reply.

EASTERN DIS.
July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH,
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

1st. The account of the Pemberton debt as stated by M'Donogh, his receipt, and the notes of Relf and J. W. Zacharie, given on the 1st of July, 1829, constitute an agreement or contract between M'Donogh on the one part, and Relf and J. W. Zacharie on the other, relative to a debt due by Pemberton, and the succession of Mrs. Zacharie, secured by mortgage on the plantation.

2d. Either this agreement is an independent contract of sale of the Pemberton notes, with a resolutory condition, and then it was dissolved by the foreclosure of the mortgage, or Relf and Zacharie became sureties in a collateral or accessory contract, or guarantors, of the Pemberton debt, and bound themselves, *in solido*, for its payment.

3d. Every obligor in an obligation, *in solido*, is, in one sense, a principal debtor, viz : he owes the whole debt, but, as between the original parties to the contract, one debtor may be the principal or real debtor and the others only his sureties. In the present case, Pemberton, then Mrs. Zacharie, then P. F. T. Zacharie, were successively principal or real debtors.

Relf and J. W. Zacharie, were never more than sureties or guarantors, bound *in solido*.

4th. In a litigation between the original parties, to an obligation *in solido*, when there exists a real debtor, viz : a debtor in his own right and the others are sureties, the sureties or guarantors are only bound to pay the amount of the real or principal debt, and may avail of any exception *(exceptions realles)* arising out of the contract, or any failure of consideration, to reduce the debt.

5th. So also, if Relf and Zacharie be considered as guarantors of the payment of the Pemberton debt, they are only bound to pay so much of the debt as became due under the original contract with Pemberton.

6th. The Pemberton debt as set forth in M'Donogh's account or statement of 1st July, 1829, was the consideration of the notes given by Relf and Zacharie ; that consideration has failed to the amount now claimed by M'Donogh from defendants.

EASTERN DIS.
July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH,
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

7th. The exceptions and defences by which the Pemberton debt was reduced, were exceptions and defences which *grew out of the contract*; and such as sureties or guarantors may avail of.

8th. There is no evidence that Relf and Zacharie knew of, or meant to waive any exceptions to the contract or defences by which the debt could be reduced.

If it was intended to waive them, it should have been inserted in the contract; as sureties they could not waive any defence growing out of the contract.

9th. The real amount of the Pemberton debt was fixed in the suit of M'Donogh *vs.* P. F. T. Zacharie, and has been paid in full.

10th. Relf and J. W. Zacharie, the sureties or guarantors of the payment of that debt, are, therefore discharged.

First point:

The account, as stated by M'Donogh and his receipt, and the notes of Relf and Zacharie, dated the 1st of July, 1829, constitute an agreement or contract relative to the Pemberton debt.

The account is a statement of what was then due on the Pemberton debt; it professes to be so.

In his receipt, M'Donogh speaks of it as a statement of the balance due and *owing to him by John T. Pemberton*. The receipt calls itself an *arrangement* between the parties.

The debt was due by Pemberton; had been assumed to be paid by Mrs. Zacharie; but it was neither the debt of Relf nor J. W. Zacharie.

The Pemberton debt was incurred for the plantation; the title to the plantation was not acquired by Relf and Zacharie; the engagement of Relf and Zacharie to pay that debt was collateral to the obligation of the real debtors of the Pemberton debt; we therefore, consider it fully established, that it was not the debt of Relf and J. W. Zacharie.

We must recognize it as a contract or agreement; there are obligations on both sides; Relf and Zacharie sign notes,

EASTERN DIS.
July, 1841.
_____
RELF &
ZACHARIE
vs.
M'DONOGH,
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

M'Donogh states the consideration, and in relation to what subject the agreement is made, viz : the debt due on the seven Pemberton notes.

The notes of Relf and Zacharie, express to be for value received. What is the value received? Had these notes passed into the hands of *bona fide* holders, this inquiry could not be made, but as the notes are in first hands, we are at liberty to inquire into the nature of the whole agreement.

It cannot be denied that it is an agreement; under what class of contracts this agreement ranks, will be inquired in the next head.

Second point :

The counsel of defendants has considered this contract as an independent contract of sale of the Pemberton notes, with a resolutory condition.

He treats the contract as. *a sale* by M'Donogh to Relf and Zacharie, of the Pemberton notes and mortgage, but a sale liable to be dissolved by the non-payment of the price, viz: of the notes of Relf and Zacharie, like any other sale upon credit; that M'Donogh reserved and exercised the right to dissolve the contract of sale, and to foreclose the Pemberton notes and mortgage, and to prosecute his rights " the same as if this arrangement (the receiving by me the notes of Richard Relf and James W. Zacharie) had never taken place." That M'Donogh, having exercised his reserved right of recourse on the Pemberton notes and mortgage, the contract of sale of the 1st July, 1829, is resolved and dissolved, and is to be considered as if it had never taken place. Consequently, the notes of Relf and Zacharie should now be delivered up, for one party cannot be absolved from the contract, and another held to it; and he very consistently demanded that the amount of the first note which had been paid by Relf and Zacharie, should be refunded.

The following are the articles of the code on the resolutory condition : *Civil Code*, 2040.

" The dissolving condition is that which, when accomplish-

ed, operates the revocation of the obligation, placing matters in the same state as though the obligation had not existed."

Eastern Dis.
July, 1841.

Relf &
Zacharie
vs.
M'Donogh,
and
M'Donogh
vs.
Relf &
Zacharie.

M'Donogh reserves the right, if Relf and Zacharie do not pay their notes, to dissolve the agreement, to foreclose the mortgage, and act as if the arrangement had never taken place.

It is contended that he adopted this alternative, dissolved the agreement and cannot now recur to it.

The contract is certainly susceptible of this construction. It might be considered as a sale of the notes, on condition of payment of the price, as all sales on credit are.

M'Donogh might have enforced the contract against Relf and Zacharie, obtained a judgment, sold their property, imprisoned their persons, etc., but he chose to dissolve it and have recourse to his rights and remedies against the plantation.

But he cannot dissolve it and then ask for specific performance as he is now doing. Having exercised a right which he reserved on the footing of dissolving the contract, and treating as if it had never been made, he cannot now have recourse to it.

This is the strict legal view in which the contract is to be considered according to the very express terms of it, and of course it furnishes the defendants with a complete defence against their notes.

If Relf and Zacharie are to pay their notes, M'Donogh must give up to them the Pemberton notes, and as will be seen hereafter, he has precluded himself from doing so. If the contract is not thus to be viewed as a sale of the Pemberton notes, dissolved by M'Donogh for want of fulfilment of its conditions, the next inquiry is, to what other class of contracts does it belong.

It is of great importance accurately to determine the class of contracts to which any particular agreement belongs, for in that way only can the appropriate legal principles be applied to its obligations ; and if we do not keep the appropriate legal principles of every contract in view in deciding on it, the ad-

EASTERN DIS.
July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH,
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

ministration of justice will end in the confusion of jurispru-
dence.

However inartificially a contract is made, it is not difficult to
ascertain the proper class to which it belongs, if we regard
substance, not form.   Parties cannot make the contract of do-
nation out of a sale, by saying that one gives land, and the
other money, even if separate notarial acts be drawn with pro-
per form of bonds.

Nor can a contract, in substance a partition, be made a sale ;
nor a sale, an exchange, etc.; nor can what is a contract of let-
ting and hiring, by any form of words, be made a sale.

Let us examine what is the substance of the contract under
consideration :

M'Donogh is the holder of Pemberton's notes,  secured by
mortgage on a plantation, which had been purchased by Mrs.
Zacharie, who had stipulated  to pay the notes of Pemberton.
On the 1st July, 1829, they were all due.   M'Donogh agrees
with Relf and Zacharie, that if they will give their notes at
from one to six years, bearing interest, for the  amount due on
the Pemberton notes, which bore interest, he will give the time,
but  expressly reserving the  right  to annul the contract and
foreclose the mortgage, if any of their notes are not paid.

There is also an  express agreement, that if Relf and Za-
charie  pay their notes, they shall be  subrogated to the rights
of M'Donogh on the  Pemberton notes.   Relf and Zacharie
make this agreement and  give their joint and several notes
accordingly.

The question is, what is the  nature of this contract; under
what head of contracts is it to be classed.

Is it a sale, a loan, a pledge, a suretyship, guarantee, or
what other denomination of contract.

If it be a conditional sale, we have seen it is dissolved, and
defendants' notes must be delivered up to them.

Let us examine if it be not a contract of suretyship, a col-
lateral or accessory contract, a contract to guarantee the pay-
ment of a debt due by a third person.

The counsel of M'Donogh admits in head No. 6, that there
are two contracts ; one principal or main contract, and one col-
lateral or accessory contract.   He contends that Relf and Za- Relf &
Zacharie
vs.
M'donogh,
and
M'donogh
vs.
Relf &
Zacharie.
charie's notes or contract, is the principal or main contract, and
the Pemberton debt is a collateral contract to secure the other,
Let us test this question by the definition of principal and col-
lateral contracts, *Civil Code*, 764.

A principal contract is one entered into by both parties, on
*their own accounts*, in the several qualities they assume.   An
accessory contract is made for assuring the performance of a
*prior* contract, either by the same parties or by others, such as
suretyship, mortgage and pledge.

Pothier defines the contract of surety, to be a contract by
which a person obliges himself, on behalf of a debtor to a cre-
ditor, to pay him either the whole or part of what is due from
such debtor, and by way of accession to his obligation.

It is on this point that the whole case turns.   Under head No.
4, the counsel of M'Donogh says :

" Relf and Zacharie asked and obtained from the plaintiff,
M'Donogh, a further prolongation of the time of payment,
(viz: of *the Pemberton debt*,) of six years from that date, (viz:
of *the 1st of July*, 1829,) on their giving their individual
notes at one, two, three, four, five and six years, for the amount,
with six per cent. interest for the time they had to run, making
*themselves the principal debtors*, and leaving the old notes of
Pemberton with the mortgage, as a security for their eventual
payment."

In this passage the counsel of M'Donogh adroitly assumes
the only point in controversy, viz : who were the principal,
real, original debtors, which was the principal and which the
collateral contract.

All persons who bind themselves jointly and severally, are
considered in law as principal debtors in this sense of the
word, that each obligor owes the whole debt, yet in the truth
of things only one person may be the real debtor, and the
other his sureties ; and if the sureties *in solido*, when called

EASTERN Dis.
July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH,
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

upon to pay, can show that the real debtor did not owe the debt, or owed only part of it, or has paid all that is due on the debt, the sureties are entitled to relief, being bound to pay only what the real debtor is bound to pay. This idea is fully expressed in article 2102.

If the affair for which the debt has been contracted *in solido*, concern only one of the co-obligees *in solido*, that one is liable for the whole debt towards the other co-debtors, who, with regard to him are considered only as his securities.

It is manifest that the word, co-obligés, is erroneously translated into co-obligees. The correct translation of this past participle is co-obligors; an obligee in English is the person in whose favor the obligation is made ; an obligé in French is the person bound to fulfil the obligation, or what we call an obligor. The French have no corresponding *substantives* to our words, obligor and obligee.

Pothier's language, No. 264, is : " If one person only profits by the contract, and the other is only bound *in solido* with him, for his accommodation, the person who has alone profited by the contract is the only debtor ; the other, although a principal debtor as regards the creditor, is, as regards his co-debtor, with whom he is bound for his accommodation, only a surety for the principal debtor for whom he becomes surety."

It is the common case of an accommodation endorser, who is bound to the payee for the whole note, but is not bound at all if the maker be not bound, or has paid.

We say that Pemberton was the real debtor, and whatever sum Pemberton was bound to pay, Relf and Zacharie were bound to pay. If Pemberton, or *those who engaged to pay his notes*, have paid all that is *legally due* on these notes, the engagement of Relf and Zacharie is fulfilled.

We insist, that from the nature of the contract, and the terms of the agreement of the 1st July, 1829, the original or real debt always remained the debt:

EASTERN DIS.
July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH,
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

1st. Of Pemberton, who made the notes in 1818.

2d. Of Erwin who assumed it in 1821.

3d. Of Mrs. Zacharie, who also assumed it in 1821.

4th. Of P. F. T. Zacharie, who, also, assumed it in 1830.

On the 1st July, 1829, it was the debt of Mrs. Zacharie's succession.

By the agreement of 1st July, 1829, Relf and J. W. Zacharie, gave their personal guarantee for its payment, became bound as sureties *in solido;* entered into a collateral, accessory and auxiliary contract for its payment ; superadded their personal responsibility.

Relf and Zacharie bound themselves to pay the whole debt due by the purchasers of the Pemberton plantation ; they are sureties inasmuch as they only bind themselves to pay the debt due by *other persons.*

A principal debtor is usually understood to be one who has received the value and owes the debt *on his own account.* Any one who has not received value but from friendship or other collateral motives undertakes to pay the debt of another, is a mere surety or guarantor ; he accedes to a contract already in existence, and binds himself to fulfil it. Still he is only bound to pay the debt due by the real debtor, and no more. If, by any legal grounds arising out of the contract, the real debtor is discharged, the accessory contract becomes also extinct.

Let us criticise and examine the language of M'Donogh's agreement of the 1st of July, 1829.

1st. He acknowledges the receipt of Relf and Zacharie's six notes.

2d. He says, if Relf and Zacharie's six notes are regularly paid when due, " they will be in full payment to me of the *balance due* me on seven promissory notes, held by and *owing me* as above stated, *by John T. Pemberton,* and secured," &c.

3d. He says, said notes of John T. Pemberton being still in *my possession,* and *to be held by me* until the notes of Relf and J. W. Zacharie are paid, when they (viz : Pemberton's notes) are to be delivered up to Relf and Zacharie.

EASTERN DIS.
July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH,
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

4th. In case that Relf and Zacharie's notes are not paid, M'Donogh reserves the right of foreclosing the mortgage on Pemberton's notes as if the arrangement (viz: the receiving the notes of Relf and Zacharie) had never taken place.

Now, it does appear manifest, that if M'Donogh had at once given up the notes of Pemberton without reservation, for the notes of Relf and Zacharie, it would have been a sale of the Pemberton notes.

But he does not do so : either then it is a sale of the Pemberton notes, *on the condition* of the payment of the price, which sale M'Donogh *has chosen to dissolve*, because the price was not paid; which is the view taken of the contract by the senior counsel of Relf and Zacharie.

Or else, it is a contract of guarantee or suretyship, entered into by Relf and Zacharie, to guarantee and secure to M'Donogh the full payment of all that was or would legally be due and owing on the Pemberton notes.

And we would here again observe, that it is not in the power of parties by the use of words, to change the real and legal nature of contracts. If Relf and Zacharie had in so many words, said, we promise to pay M'Donogh the amount due on the Pemberton notes, and make ourselves principal or real debtors therefor, such words cannot alter the force and effect of the law ; the debt would still have been the debt of Pemberton, and Relf and Zacharie would only have been sureties : for one who is, in the truth of things, only a surety for the debt of another, cannot, by words, change the nature of the contract, any more than contracting parties by calling a sale, where property is given and money paid for it, a donation, make it so; or make, what is in truth a partition, a sale, by the words they use.

M'Donogh might have sold the Pemberton debt of $74,779 84 for what sum he pleased, and even in that case, as we shall hereafter show, if only $40,000 was due on it, M'Donogh would have been liable for the deficiency, under *Civil Code, article* 2616 : he who sells a debt or incorporeal right warrants

its existence at the time of the transfer, though no warranty be mentioned in the deed.

· RELF &
ZACHARIE
_ *vs.*
M'DONOGH,
AND
M'DONOGH
*vs.*
RELF &
ZACHARIE.

It is clear, from the language of the agreement, that M'Donogh never gave up his original debt and mortgage; he never assigned it or transferred it. He promised to do so, *if* and *when* Relf and Zacharie should pay their notes, reserving a right to dissolve the agreement if they did not comply with their engagement.

If, then, it was not a conditioned sale of the Pemberton notes, which might be and was dissolved by M'Donogh, on account of the non-compliance on the part of Relf and Zacharie, the only other point of view in which the contract can be considered, is, that Relf and Zacharie became sureties or guarantors for the payment of those notes.

As we consider that the result of this suit depends on the legal character or nature of the agreement of the 1st of July, 1829, we must be permitted to illustrate the position, that Relf and Zacharie are only sureties, and to try the character of their liability by every test.

Suppose, that on the 1st of July, 1829, Pemberton's notes had all been paid, unknown to Relf and Zacharie, would Relf and Zacharie have been liable on their notes? Assuredly not; for if there was no subsisting debt due by Pemberton, the contract of the 1st of July, 1829, would be void. Suppose that Pemberton, or his assigns, under the purchase of the plantation, had brought a suit on the contract of sale, or when sued on the Pemberton notes by reason of redhibitory vices in the slaves, or deficiency in the quantity of the land, had struck off $30,000 from the purchase money, viz: reduced Pemberton's notes that amount, or that Pemberton and subsequent purchasers had been wholly evicted, and had set up this defence, and been discharged from liability, would not Relf and Zacharie have been entitled to a like reduction on discharge from their notes?

Relf and Zacharie undertook to pay the sum due on the seven Pemberton notes; this was the sum and substance of the

Eastern Dis.
July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH,
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

contract on their part, and the reducing it by calculation to a fixed sum on the 1st of July, 1829, did not bind them to pay that sum on the notes, if *so much was not due on them.*

Suppose there had been an error of calculation, and $30,000 struck off on account of this error, would it not have reduced the liability of Relf and Zacharie an equal sum ?

The mere fact of the claim being liquidated in figures on the 1st of July, 1829, did not bind them to that figured account, if, either in fact or in law, *that account was not due.*

As we have seen a release of Relf and Zacharie from their engagement, an agreement to surrender up and dissolve the agreement of the 1st of July, 1829, could not have diminished M'Donogh's claim on the Pemberton notes; but a release of the Pemberton notes or mortgage would have released Relf and Zacharie. Yet the counsel of M'Donogh affects to consider Relf and Zacharie as the principals, viz : real debtors, in contradiction to the affidavit of his own client.

It is again urged, if the contract of the 1st of July, 1830, be not a contract of surety, in which the debtor of the Pemberton notes, viz : the person who was bound to pay them, was the real debtor, and Relf and Zacharie were the sureties, there is no class of contracts to which it belongs.

Relf and Zacharie might not have been able to avail themselves of any defence, if their notes had passed into the hands of *bona fide* holders ; but that would have arisen from the *form* of the *contract,* which was thrown into the shape of negotiable notes.

But so long as the notes remain in the hands of M'Donogh the original party to the contract, Relf and Zacharie stand, as to him, in the same relation as if they had signed a contract, binding themselves *in solido,* to pay to him the debt due by the debtor of the Pemberton notes. The Pemberton notes being in the hands of M'Donogh, were subjected to all the conditions of the original contract out of which they sprung. So, also, the Relf and Zacharie notes in M'Donogh's hands

EASTERN DIS.
*July,* 1841.

RELF &
ZACHARIE
*vs.*
M'DONOGH,
AND
M'DONOGH
*vs.*
RELF &
ZACHARIE.

must be subjected to all the conditions, events and qualifications of the argreement, which was the cause of their existence.

If the debtor of the seven Pemberton notes has paid to M'Donogh all the money that is legally due upon them, the Relf and Zacharie notes are discharged; for what was all that Relf and Zacharie undertook and were legally liable for, by giving their six notes on the 1st of July, 1829. And as we shall hereafter find, all that was ever legally due upon the Pemberton notes has been paid M'Donogh.

3d. In obligations *in solido,* every obligor owes the whole debt; but, as between original parties to the contract, one debtor may be the real debtor, and the others his sureties. The payment by any one obligor, to the creditor, of all that is legally due on the debt, discharges the co-obligors as to the creditor, as before observed. This is only an enunciation of a text of the code, article 2102.

If the affair for which the debt has been contracted *in solido,* concerns only one of the co-obligors *in solido,* that one is liable for the whole debt towards the other co-debtors, who, with regard to him, are considered *only as his securities.*

The word co-obligees, as we have seen, is an erroneous translation of the French word *co-obligés,* which means co-obligors, which is clear from the idiom of the French language; also, from *Pothier, part* 2, *chapter* 3, *number* 264.

If any one co-obligor pays the debt, the rest are discharged as regards the creditor; and if it *be the principal or real debtor himself,* who pays, the co-obligors are discharged altogether.

Who was the debtor of M'Donogh?

1st. Pemberton.

2d. Erwin, when he bought from Pemberton, agreed to pay his notes.

3d. Mrs. Zacharie, when she bought from Erwin, agreed to pay the Pemberton notes.

EASTERN DIS.
*July*, 1841.

RELF &
ZACHARIE
*vs.*
M'DONOGH,
AND
M'DONOGH
*vs.*
RELF &
ZACHARIE.

4th. In 1829, the succession of Mrs. Zacharie was bound to pay these notes.

5th. In 1830, P. F. T. Zacharie, when he purchased the plantation, agreed to pay the Pemberton notes.

In 1829, Relf and Zacharie, in their *individual* capacities, as M,Donogh's counsel admits, agreed to pay this debt, a *debt not due by themselves*, but due by Pemberton and the succession of Mrs. Zacharie.

Relf and Zacharie thus became sureties *in solido*, for Pemberton and the Zacharie succession. In 1833-4, in a suit between M'Donogh and P. F. T. Zacharie, the amount of the debt due by Pemberton, and the Zacharie succession was liquidated at the sum of fifty-two thousand and twenty-eight dollars and sixty-three cents, and the whole of that sum has been paid to M'Donogh.

The whole object and agreement of Relf and Zacharie in giving their notes, was to pay the Pemberton notes and debt to M'Donogh.

All that was legally due upon the Pemberton notes has been paid ; it follows that Relf and Zacharie's notes are discharged.

The counsel of M'Donogh says, that the suit was *in rem*. Admit it, but it must have been in consequence of the debt due by some present or previous owner of the *res*, who was the debtor, for whose debt the thing had been mortgaged. That person or the person who, succeeding to the title of purchaser, agreed to fulfil his obligations, was the real and true and actual debtor, and it was for the fulfilment of that obligation that Relf and Zacharie were sureties.

If the Pemberton debt was a collateral security for Relf and Zacharie's notes, when, and where, and how, and by whom was it made so ?

Where is the agreement by which the owners of the Pemberton plantation bound themselves, or the Pemberton plantation, to pay the notes of Relf and J. W. Zacharie ?

EASTERN DIS.
July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH,
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

Which is oldest in point of time? How can the collateral debt exist before the principal debt? The inconsistencies of this assumption are endless.

4th. In a litigation between the original parties to an obligation *in solido*, where there is a real debtor, viz: a debtor in his own right, and the others are sureties, the sureties are only bound to pay the amount of the real or principal debt, and may avail of any exception " *exceptions realles*" arising out of the contract, or a failure of consideration to reduce the debt.

The difference between exceptions or defences, growing out of the contract, and personal exceptions, is very clear.

Personal exceptions belong only to the person using them, as minority, coverture, insanity, etc. Real exceptions grow out of the contract, such as fraud, lesion, error in the contract, failure of consideration, redhibitory vices in slaves, eviction from the object of sale, etc.

In the brief of M'Donogh's counsel under the 8th head, it is said: " That the judgment of the Supreme Court, in the case of M'Donogh and Zacharie, 5 Louisiana Reports, relieved the third possessor from the obligation to pay interest, for reasons solely applicable to the position and rights of the parties, *resulting from the original contract with Pemberton;* nothing else was submitted by the pleadings; nothing else was embraced by the decree."

Under the 10th head, it is said, that the judgment of the Supreme Court, (which cut off thirty-six thousand dollars interest,) was founded on a technical or formal objection, which could only avail P. F. T. Zacharie.

The first passage admits expressly, that the defence on which the interest was reduced, " resulted from the original contract with Pemberton ;" viz: is an *exception realle*. This is precisely what we contend for. The interest was to stop, if M'Donogh did not discharge the mortgages, and notify Pemberton, or his assigns, of the fact.

Mrs. Zacharie became not only a privy in estate, but a privy

EASTERN DIS.
July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

in contract to Pemberton, and also a party to the original contract. She bound herself to pay Pemberton's notes, and M'Donogh was party signing to this contract, and was bound to fulfil all its obligations to Mrs. Zacharie, and to every successor to the title of the plantation.

M'Donogh failed to fulfil the contract, he did not notify Mrs. Zacharie, nor her heirs, nor the purchaser, P. F. T. Zacharie, that he had cancelled the mortgages. His obligation to do so, resulted from his contract, and the benefit of his failure to comply with the contract extended to every assign of Pemberton, and more especially to Mrs. Zacharie, with whom he had expressly contracted in relation to it. The interest from 1824 was struck off, because of *his failure to comply with the obligation of his contract* with Pemberton and Mrs. Zacharie.

It is difficult to understand what is meant by that passage of the brief which calls the defence a technical one. A *technical* objection usually refers only to the form of the *remedy*. If it be meant to convey the idea, that the objection by which the interest was lost, viz: the want of notification of the cancelment of the mortgages, as stipulated by M'Donogh, was an objection personal only to Pemberton or his successors in title, we say the objection could be taken by Pemberton or his successors in title; and in fact, it was *successfully taken* by P. F. T. Zacharie in that capacity; but we say it could also be taken by the sureties to that contract of sale, because as is said in the eighth head, *it grew out of that contract.*

It was not what is called a personal exception, like minority, coverture, insanity, &c., which can only be taken by the minor, married woman, &c., and not by their sureties; but it is an exception arising *out* of the *contract*, out of the *stipulations made* by the vendor, which every successive vendee or his sureties may avail of. *Civil Code,* 3029.

Suppose that there had been redhibitory vices in the slaves, diminution or deficiency in the quantity of the land, eviction for want of title in the vendor, the original vendee, and every

EASTERN ˜DIS.
˒July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH,
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

successive vendee and their sureties could set up this objection and reduce or discharge the contract of debt, because the vendor, as part of his contract, is bound to warrant the slaves, the quantity of land and the title, to Pemberton and his assigns or successors, and the defence grows out of the contract; and as this exception grows out of the contract, it avails the sureties of the contract; and minority, coverture, &c., could not avail the sureties, because they are mere personal exceptions, which can only be used by the minor, married woman, &c.    There was another exception which the counsel of M'Donogh does not notice, viz: that a large amount of the interest on the Pemberton debt was struck off, because that P. F. T. Zacharie, the successor of Pemberton, was disturbed in his possession by the suit of the heirs of Belly.    See 5 *Louisiana Reports,* 254.

This disturbance, under contracts made during the old code, page 360, article 85. Daquin et al. *vs.* Coiron, 3 *Louisiana Reports*, 409, puts a stop to the interest on the debt.    This exception is one which arose out of the *law of the contract*, and availed Pemberton, and every successive vendee, and of course availed the sureties or guarantors of the vendee.

After all, it resolves itself again into the question, were Relf and J. W. Zacharie, by virtue of the contract of the 1st of July, 1829, sureties and guarantors of the Pemberton debt? If they were, as we think we have proved, then these exceptions by which $36,000 of the interest was struck off, avail them as effectually as they *have availed* those who succeeded Pemberton in the title and in the obligation to pay the debt.    We think we have made it appear very clear, that if Relf and Zacharie had paid their six notes, they would have been entitled to an assignment or transfer of the Pemberton notes and mortgage to themselves.

If, when called upon for payment of their notes, Relf and Zacharie had ascertained that M'Donogh, under whose control they were, had released the whole or any part of the Pemberton debt, such fact of release would constitute a defence to

EASTERN DIS.
July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH,
AND
M'DONOGH
vs.
RELF &
ZACHARIE.
Relf and Zacharie: a release to the drawer of a note, releases the endorser.   *Civil Code*. 3030.

The surety is discharged, when, by the act of the creditor, the subrogation to his right, mortgages and privileges, can no longer be operated in favor of the surety.   A release to the principal releases the surety.

So it is, if the creditor does any act, *or omits* to do any act, by which commission or omission the recourse against the real debtor is lost or diminished, the surety is discharged.   *Principal and Surety*, 98 *Pothier.*

On a payment by Relf and Zacharie, M'Donogh was bound to assign to them the Pemberton notes and mortgage, with all the rights belonging to them, as secured by the contract.

In the winter of 1841, a re-argument of this case was ordered.

The case was then argued by *D. Seghers and G. Eustis, Esquires*, of counsel for the appellees, and by *Mazureau and J. R. Grymes, Esquires*, for the appellant M'Donogh.

*Eustis*, in the further argument, maintained the following points on the part of the appellees:

1. The main inquiry in this case is as to the character of the contract between the parties.

The nature of a contract depends entirely on the obligations it imports; its form is immaterial.   The contract under consideration has every requisite of the contract of surety ; Code, art. 3004 ; Pothier on Obligations, 365.

The law of suretyship appears to contemplate the case of the contract being modified by the various agreements of parties, which their convenience may suggest, but when *in point of fact* the contract is one of surety between the original parties, it holds them to the principles of the contract.   " If the suretyship exceeds the debt, or is contracted on more onerous conditions, it shall be reduced to the conditions of the principal obligation ;" Code, 3006, 3014; 2 Pardessus, Droit Commercial, No. 385.

The relations of the original parties to bills or notes may be changed by parol evidence; Chitty on Bills, 81.

If a bill or note is given in consideration of a pre-existing special contract, and that contract fails, is rescinded or satisfied, this fact will be a good defence between the original parties of the bill or note ; Bailey on Bills, 342.

2. If this be not a contract of surety, it is incumbent on the opposite party to show to what class of contracts it does in fact belong, and our inquiries are not at all aided by its designation as a contract *sui generis*.

This contract strictly and technically is of that class of contracts known among the Romans as *pacta constitutæ pecuniæ;* Institutes, lib. 4, tit. 6, sec. 8 and 9 ; ff. 13, tit. 5, laws 1, 19, *id quod Gloss.* p. 9, z: Code 4, tit. 18 ; Sententiæ Pauli, lib. 2, tit. 2 ; Pandects by Pothier, vol. 5, p. 494 ; Pothier on obligations, following 456, sec. ix., not in use at present ; Toulier, vol. 6, No. 396 ; Règles de droit, 227.

The pactum constitutæ pecuniæ is a contract of surety ; Henneccius ad pandectas, lib. xiii, tit, vi, sec. civ; *Voet ad Pandectas, lib.* xiii, *tit.* vi, sec. 14, ff. lib. xiii, tit. v ; 19 de pecuniâ constitutâ Gloss.

The reduction of the Pemberton debt by the judgment in the case of M'Donogh *vs.* Zacharie, was from a cause not personal to the parties but inherent in the debt itself ; to wit : the omission on the part of M'Donogh to perform a condition without which judgment the debt was not demandable. This defence is available to sureties ; Code, 3029 ; Pothier, 380.

A consequence which follows from the judgment and satisfaction of the Pemberton debt is that it is no longer in the power of M'Donogh to subrogate Relf and Zacharie to his rights as a creditor of the Pemberton debt ; that debt having been extinguished, and if by a less sum than its nominal amount the reduction was in consequence of an omission or *laches* of the creditor. The case of Galy, Sirey, Reports of the Court of Cassation, 30, 2, 89 ; Theobald, law of principal and surety, Nos. 174, 175 and 176.

EASTERN DIS.
July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH,
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

It is immaterial whether the fund held by the creditor as security was received by him before or after the contract. L'article 2039 C. Civ., portant que la caution est dechargée lorsque la subrogation aux droits hypothèques et priviléges du créancier ne peut plus par le fait du créancier, s'opérer en faveur de la caution, s'applique même au cas où les droits ou hypothèques n'avaient été aquis par le créancier que postérieurement au cautionnement; case of Dumesnil, Dubuisson, 18th March, 1828; Sirey, 28, 2, 121; D. 26, 2, 76.

The principal debtor in an hypothecary action is virtually a party to the proceedings instituted against a third possessor of the mortgaged property who is personally bound for the debt. The want of a formal citation does not prevent him from being in law bound by the judgment rendered between the creditor and the third possessor; Phillimore's Ecclesiastical Reports, 243.

The judgment in the case of M'Donogh vs. Zacharie is *res judicata* as to the amount of the principal debt, and no more than that sum can be required of Relf and Zacharie under the satisfaction of that judgment, which has extinguished the Pemberton debt; x Toulier, 202, 209, 210.

3. Contracts of this description, that is, those in which heirs or persons in a representative capacity assume *under new titles* and *other forms*, obligations to which originally they were not parties, have received a construction which may be almost considered as conclusive upon the court from the high authority by which it is sustained; the rules on this subject support the views previously taken; Pothier on Obligations, sec. 19, chapter de constitutâ pecuniâ, No. 744; Louisiana Code, 2251, 2252 et seq.

In the case of M'Donogh vs. Zacharie, before cited, this court says, " Neither in our opinion does the circumstance of partial payments having been made, raise such a presumption of knowledge on the part of the vendees as to dispense the vendor from his obligation to communicate the fact of cancelling before he could enforce these obligations to pay."

EASTERN DIS.
July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH,
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

If *a payment* of the sum stipulated or part of it, did not dispense the vendor from his obligation nor prevent the interest from having been due or demandable, those consequences cannot be attached to a mere accessory assumpsit on the part of persons who were not privy to the original contract.

On these grounds the counsel for the defendants maintains that the judgment of the District Court must be affirmed.

On consideration of the case, the court propounded the following questions, to the counsel on both sides, to be answered in writing:

*Simon, J.* After a full investigation of all the points submitted to our consideration, we find it necessary to request the counsel to give us their views in writing on certain questions which we consider very important in this cause, and which in the last argument were not in any manner investigated on either side ; to wit:

1: Were the notes which are the subject of this controversy given *through error* on the part of Relf and Zacharie, for the whole amount of the account marked A, and under the belief that M'Donogh was *legally* entitled to claim of the succession of Mrs. Zacharie, the interest included in his said account? or were they given as the result of a compromise?

Or in other words:

2. Would Relf and Zacharie have given those notes for the amount of said account, if they had known or been aware that M'Donogh's claim against the succession, as liquidated by the judgment of this court in 5 *La. Rep.*; 255, could not *legally* amount to more than $52,028 63? Did they act under the *impression* that the interest was *legally* due, or did they intend, under the circumstances of the case, to make a compromise with M'Donogh, from which the succession they represented was to derive an advantage?

3. If Relf and Zacharie did not act in the view of an advantageous compromise, and were laboring under an *error of law,* (and perhaps of fact) when they consented to give their notes

EASTERN DIS.
July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH,
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

to the plaintiff for the amount of interest by him claimed; does such error come within the meaning of any of the provisions contained in art. 1840 of the La. Code?

4. If the plaintiff could not *legally* claim the interest included in the notes; was not the interest *morally* due by the succession?

Let the above case be re-argued in writing on the foregoing questions only.

These questions were responded to at great length by *Mr. D. Seghers*, *Mr. Eustis*, and *Judge Watts* for the appellees.

*Mr. Mazureau* and *Mr. Grymes* replied in elaborate arguments on the part of the appellant.

The judges being divided in opinion, the majority pronounced the following judgment:

*Simon, J.* delivered the opinion of a majority of the court.

In the first of these consolidated causes, the plaintiffs claim the reimbursement of the sum of eight thousand nine hundred and eighty-seven dollars, which is the amount of a promissory note of hand by them paid to the defendant, which, together with five other notes, amounting altogether to *ninety thousand three hundred and ninety-three dollars and twenty-eight cents*, are alleged to have been executed without a cause, the petitioners not having received any consideration for the same; they also pray that the said five notes be cancelled and returned to them.

In the second, the plaintiff seeks to enforce the payment of the balance due on the said five notes, which, as he states, after allowing all past credits and payments, amounts to *thirty-six thousand seven hundred and ninety-six dollars and twenty-two cents*, for principal and interest on the same, according to an account filed with his petition.

The issues between the parties are: on the one hand, a general denial of the allegations contained in R. Relf and James W. Zacharie's petition; and on the other hand, an averment that

EASTERN DIS.
*July*, 1841.

RELF &
ZACHARIE
*vs.*
M'DONOGH,
AND
M'DONOGH
*vs.*
RELF &
ZACHARIE.

the debt for which the notes sued on were subscribed, has been settled and liquidated by a judgment of this court, rendered on the appeal of a judgment of the court of the fourth judicial district, in the suit of M'Donogh *vs.* P. F. Theodore Zacharie; that the amount awarded by the said judgment of this court to John M'Donogh was afterwards paid to him by James W. Zacharie, whereby the debt was extinguished; and that consequently the notes sued on are without consideration.

There was judgment in the inferior court in favor of Relf and Zacharie, cancelling the five notes sued on by M'Donogh; from which judgment, the latter appealed.

This case grows out of a transaction which took place on the 1st of July, 1829, between the parties to this suit in relation to the debt due to John M'Donogh by the succession of Madame Zacharie, deceased, which debt originated in the sale of a plantation and slaves from the said M'Donogh to John T. Pemberton in the year 1818. The principal facts relative to the origin of the said debt, and to the liability assumed by Madame Zacharie, after whose death the property mortgaged was sold to Theodore Zacharie, who also assumed the payment of said debt, are fully stated in the case of *M'Donogh* vs. *Theodore Zacharie*, 5 *La. Rep.*, 247.

The additional facts of the case, as shown by the record, are these: The defendants, Relf and Zacharie, were testamentary executors of Madame Zacharie; Relf having married two of her daughters, represented two portions of her succession, and James W. Zacharie, one portion. On the 1st of July, 1829, M'Donogh communicated to them a detailed statement of the amount due him on the original Pemberton debt and mortgage, which after allowing several credits, left a balance in his favor of *seventy-four thousand seven hundred and seventy-nine dollars and eighty-four cents;* for this sum, he received the six joint and several notes of Relf and J. W. Zacharie, including interest at six per cent. up to the expiration of the instalments, and forming the aggregate amount of $90,363 28, and gave them the following receipt: " Received of Messrs. Richard Relf and

EASTERN DIS.
*July*, 1841.

RELF &
ZACHARIE
*vs.*
M'DONOGH,
AND
M'DONOGH
*vs.*
RELF &
ZACHARIE.

J. W. Zacharie, their six promissory notes as per annexed statement signed by me, for the above amount ($74,779 84) including interest at the rate of six per cent. per annum, until due, which six notes, as above set forth, if regularly paid, when they respectively fall due and are payable, will be in full payment to me of the balance due me on seven promissory notes, held by and owing me (as above stated) by John T. Pemberton, and which are secured by mortgage on a plantation and slaves, situated in the parish of Iberville; said notes of John T. Pemberton being still in my possession, and to be held by me until those notes of Richard Relf and James W. Zacharie are first paid, at which time I promise and engage to deliver them up to said Richard Relf and James W. Zacharie; but in the event that said notes of R. Relf and J. W. Zacharie, or either of said notes, are not regularly paid on the day they shall fall due, then I shall be at liberty to seek payment of John T. Pemberton, of the whole amount of his notes and *the interest due thereon*, in money, by foreclosing the mortgage given for the securing the payment of the said notes of John T. Pemberton, or in any other manner which I may see fit and proper, the same as if this arrangement (the receiving by me the notes of R. Relf and J. W. Zacharie) had never taken place. New Orleans, July 1st, 1829. (Signed,) John M'Donogh."

The first of these notes ($8987) was regularly paid at maturity, and its amount was imputed by M'Donogh as a credit on one of the notes of Pemberton. In May, 1831, the first of these consolidated causes was instituted by Relf and Zacharie against M'Donogh, and in June, 1832, the latter instituted an action of mortgage against Theodore Zacharie to recover the amount of the Pemberton debt in principal and interest; the assumption on the part of Theodore Zacharie to pay said debt is recited in the petition, and this is the same case reported in 5 *La. Rep.*, 247, in which M'Donogh's claim *was reduced to* $52,028 63; this court rejecting a large portion of the interest claimed by the plaintiff. This judgment was subsequently executed, and James W. Zacharie, having become the pur-

EASTERN DIS.
*July*, 1841.

RELF &
ZACHARIE
*vs.*
M'DONOGH,
AND
M'DONOGH
*vs.*
RELF &
ZACHARIE.

chaser of the property mortgaged, at sheriff's sale, on the 2d of September, 1833, furnished his twelve months bond, which was regularly paid on its becoming due, and on the 5th of September, 1834, John M'Donogh gave him a full acquittance of the debt and released all the mortgages existing on the property, by a notarial act, in which we find the following declaration: "Whereas true and faithful payment has been made by James W. Zacharie of a certain bond of $52,028 63, &c., &c., now, therefore, in consideration of the full payment and satisfaction of the said bond as aforesaid, the said M'Donogh further declared, that he does by these presents cancel and annul the general mortgage, resulting in his favor from the said bond, and *as the amount of said bond, formed agreeably to the judgment of the Supreme Court, rendered in the above suit,* THE BALANCE DUE ON THE SUM OF ONE HUNDRED AND THIRTEEN THOUSAND DOLLARS, *secured* by a special mortgage in his favor, executed before Michel de Armas, late a notary public in this city, on the 23d of January, 1818, he, the said M'Donogh, further declared, that he also hereby cancels and annuls the said special mortgage existing on said plantation and slaves, as aforesaid, as well as all the reversions thereof, assumed first by Joseph Erwin, by an act passed before the said De Armas, on the 27th of March, 1821; second, by the late Mrs. widow Zacharie, by an act passed before the same notary on the 10th of October, 1821; and third, by the said P. F. T. Zacharie, in his act of purchase of the said plantation and slaves, from the succession of the said widow Zacharie. He, the said M'Donogh, authorizing and requiring the recorder of mortgages in and for the said parish of Iberville, to erase the said general mortgage, as well as the said special mortgage and all the reversions thereof, as aforesaid, from his books, as fully as need or can be by virtue of these presents." In March, 1836, the second of these consolidated causes was instituted to recover the balance due on the notes of Relf and Zacharie, after imputation of the amount received from James W. Zacharie, which balance forms the difference between the sum awarded by the

EASTERN DIS.
July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH,
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

Supreme Court to John M'Donogh as being *the balance of the price of the property sold*; and the amount in principal and interest of the notes furnished by the defendants in conformity with the statement made by M'Donogh on the 1st of July, 1829.

This case has been ably and elaborately argued on both sides; the oral and written arguments of the counsel, have afforded us all the light which could be thrown on the important questions submitted to our consideration; they are not free from difficulty, and in coming to the conclusion which I have adopted, I apprehend that we have been in some measure prompted by a strong sense of legal and moral equity, and that I have perhaps given more effect to the views which I entertain on the true intentions of the parties, than to a strict application of the rules of law that may govern the form of their contract.

Under the circumstances of the case, it does not appear to me that the notes sued on were the result of a compromise, and that the defendants were under any moral obligation to pay to the plaintiff, a sum of money which he had no right to claim against the estate of Madame Zacharie; nay, such questions are not even presented by the pleadings, and no evidence has been adduced to sustain them. It is true that being interested in the succession, and having the management of the affairs thereof, as executors, their reasons and motives, in signing the notes, may have been derived from a strong desire to bring the estate to a fair and amicable settlement with the creditors, but they did not obligate themselves as executors or as the agents of the heirs, and I cannot presume that they ever intended to bind themselves for more than the succession really owed, and contract a debt which would be disavowed by the other heirs, and for which they could not exercise any recourse against the succession or against the property mortgaged to secure it.

What was the nature of the obligation contracted by Relf and Zacharie towards John M'Donogh? Pemberton was the

EASTERN DIS.
July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH;
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

principal debtor of the notes which he had given for the purchase of the plantation and slaves, and the amount of said notes, or the balance due thereon, was secured by a special mortgage on the property. Madame Zacharie subsequently assumed the payment of the original Pemberton debt, as a part of the price of her purchase from Erwin; M'Donogh without discharging Pemberton, accepted her said assumption, and she became thereby personally liable to pay the same debt; after her death, the mortgaged property was to be disposed of to satisfy the debts of the estate, and it became necessary to liquidate the amount due to M'Donogh, and perhaps to give him an additional security for the whole of the debt, in order to be able to sell the property on credit; this object was to be attained not only for the benefit of the estate, but also for the advantage of M'Donogh, who thereby obtained the liquidation of his claim, and the personal obligations of two solvent persons as an additional security; in this state of things, he consented to take the notes of Relf and Zacharie, but he took good care to stipulate that *his rights should be preserved* against the original and principal debtor. Now, can it be believed that Relf and Zacharie ever intended to get M'Donogh's consent to their selling the property on a credit, at the enormous sacrifice of a sum amounting nearly to forty thousand dollars? The advantage which the plaintiff was to derive from the arrangement, was at least commensurate with the benefit which was expected from a sale on credit. The receipt speaks for itself; it shows clearly that the defendants were under the impression that M'Donogh was entitled to the whole amount of the interest by him claimed; since, far from giving any direct and positive consent to the terms of credit on which the property had been or was to be sold, he expressly reserved his right, in the event of the notes not being regularly paid, to proceed against Pemberton and the property, for the recovery of the whole amount of his notes *and the interest due thereon, as if the arrangement* (the receiving by him of Relf and Zacharie's notes) *had never taken place.* His object was to lose no part of the debt which

EASTERN DIS.
July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH,
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

was really and legally due him by Pemberton; but nothing shows that it was to be increased beyond its legal operation, and surely, if Relf and Zacharie had intended to give him what he had no legal right to claim, this would have been shown by the receipt itself. As it is, I cannot presume they did, and I feel morally convinced that the account furnished by M'Donogh, showing the balance which he pretended to be owing to him by Pemberton and by the succession, was taken as the basis of the settlement, and that the notes were made accordingly.

The obligation of the defendants is, in my opinion, in the nature of the *pactum constitutæ pecuniæ* of the Roman law, which *Pothier on obligations, vol. 1st, p.* 363, *du pacte constitutæ pecuniæ, sec.* 1, defines to be, *une convention par laquelle quelqu'un assignoit à un créancier un certain jour ou un certain temps dans lequel il promettoit de le payer ;* and which promise *sec.* 2, *peut être faite à son propre créancier ou an créancier d'un autre.* Indeed, it would be difficult, if not impossible, to bring this contract under any other denomination and from the features of the arrangement, it cannot be doubted that the parties never intended to bind themselves in any other way, that is to say, that the object of Relf and Zacharie was merely to engage their personal liability that the debt due to M'Donogh should be paid at certain times fixed by their notes, with the condition, that if the promise was not punctually complied with, he should be at liberty to seek his payment according to his original rights, and to enforce it against Pemberton and the mortgaged property before the expiration of the last instalment. It seems to me perfectly clear that this is the whole extent of the defendants' obligation, and that the manner in which it was contracted excludes the idea that any novation was intended, or that said defendants ever understood that they were to become personally bound as M'Donogh's sole debtors for more than the amount actually due him by the succession. "*Il résulte,* says *Pothier, loco citato, sec.* 6, *de la définition que nous avons donnée du pacte constitutæ pecuniæ, qu'il suppose la préexistence d'une dette qu'on promet de payer à celui qui en*

Where persons representing a succession, executed their notes to the creditor *for the original debt due by it and secured by mortgage,* their obligation is in the nature of the *pactum constitutæ pecuniæ,* engaging their *personal liability,* that the debt should be paid within a certain time, or the creditor be at liberty to seek payment according to his original right, on his mortgage.

If the new obligation be for more than was legally or actually due on

EASTERN DIS.
*July,* 1841.

RELF &
ZACHARIE
*vs.*
M'DONOGH,
AND
M'DONOGH
*vs.*
RELF &
ZACHARIE.

*est le créancier. C'est pourquoi, si par erreur je suis convenu avec vous de vous payer une certaine somme que je croyois vous être due par moi ou par un autre; l'erreur ayant été depuis découverte, vous ne pouvez pas en éxiger le payement, le pacte étant nul, faute d'une dette qui en ait été le fondement.* And in *No.* 21, he proceeds to say: *Il nous reste à observer que dans les titres nouveaux que passent des héritiers, et par lesquels ils s'obligent au payement de ce qui étoit dû par le défunt, ils peuvent bien, à la vérité, selon les principes que nous venons de rapporter apposer pour ce payement des clauses différentes que celles portées par le titre primordial; mais il faut pour cela qu'ils déclarent qu'ils entendent en cela innover au titre primordial; autrement tout ce qui dans les actes se trouve différent de ce qui est porté par le titre primordial, est présumé s'y être glissé par erreur; et n'est pas valable, la présomption étant que l'intention de ceux qui passent ces actes, est de reconnoitre et de confirmer ce qui est porté par le titre primordial, et non d'y rien innover."* See also Pothier on *obligations, No.* 744, in which he establishes the doctrine that the recognition of a debt is always to be understood as relative to a primordial title, and that if the recognition admits that the party making it, is obliged further or otherwise than as the primary title imports, by producing the primary title, and showing the error which has slipped into the recognition, he will be relieved.

These principles are fully applicable to the present case, and when I consider that the plaintiff had *three debtors,* each owing the Pemberton debt, viz: 1o. the succession of Madame Zacharie. 2o. Relf and J. W. Zacharie; and 3o. Theodore Zacharie: who were all obligated and bound to pay the same debt, and who, according to *Pothier, No.* 33; *loco citato, en sont tenues chacune solidairement, en quoi elles ressemblent aux fidéjusseurs, No.* 415. That there is no evidence that the parties ever had in view any other debt but that proceeding from the sale to Pemberton; that nothing was said as to the interest which was supposed to be rightfully due to M'Donogh;

*[margin note:]* the original one, the mistake being discovered the *pact* or *new obligation* is void, *pro tanto,* for want of a debt which was the foundation of it.

*[margin note:]* The recognition of a debt is always to be understood with reference to a *primordial title;* and if the party is *obliged* further, or otherwise than as the primary title imports, on showing the error he will be relieved.

EASTERN DIS.
July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH,
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

and that the extent of the obligation of Theodore Zacharie, under his general assumption, has been determined contradictorily with the creditor, by a judgment of this court: 5 *La. Rep.*, 247; in which the sum of $52,028 63, was declared to be *the balance due on the price of the property sold.* I may fairly infer that if Relf and J. W. Zacharie had been aware that M'Donogh had no right to claim more than the amount awarded to him by the Supreme Court, they would not have consented to give him their notes in accordance with the detailed account by him produced at the time of the arrangement. It is true that they paid the first note, but this only shows the continuation of the error, and the circumstance of their having protested against the payment of the other notes, by instituting their suit to have them cancelled in May, 1831, (the case in 5 La. Rep., was only decided in 1833,) indicates sufficiently that they discovered the error a short time after the payment of the said first note, and that they took immediate steps to have it corrected, long before said error was recognized by the decision of this court.

According to the *art.* 1818 *of the La. Code,* "the reality of the cause is a kind of precedent condition to the contract without which the consent would not have been given, because the motive being that which determines the will, if there be no such cause where one was supposed to exist, or if it be fully represented, there can be no valid consent." Here the representations made by the creditor, by the production of his account, were that he had a right to claim the interest; he actually claimed them, and both parties may have believed at the time that they were justly and rightfully due; but those representations turned out afterwards to be unfounded, and there was no valid consent on the part of the defendants to the contract. By the cause of a contract is meant *the consideration or motive for making it ; La. Code, arts.* 1890, 1893. Thus, if Relf and Zacharie were induced to sign the notes, because they believed that the interest carried in the account was due, there

So where R. & Z. being heirs of a succession and administering it as executors, gave their notes to the creditor by original debt and mortgage, who reserved the right to go upon his mortgage if the notes were not punctually paid, and did so after the payment of the first note; and in which the debt was ascertained by a judgment to be *much less* than the amount for which the *new obligations* were given: *Held,* that there was error for this amount, and the new obligations can have no effect.

was no cause or consideration, they were in error, and their obligation can have no effect.

From the judgment of this court against Theodore Zacharie, it is clear that he was made *personally* liable to pay the debt of the estate, although the action was originally hypothecary; he was condemned to pay the whole amount which *the succession owed* to the plaintiff, and the reduction took place, not as the result of any personal right vested in Theodore Zacharie to have the debt reduced, but because in liquidating said debt, as against the estate, contradictorily with the creditor, it was found that Madame Zacharie did not owe him more than the amount awarded by the judgment.

It is not necessary for me to inquire into the grounds and reasons which may have led this court to disallow the interest claimed by M'Donogh. It suffices to say that the decision has had its effect, and that Theodore Zacharie has been discharged from paying the amount of the interest, which, if due by the succession, he was bound to pay under his positive contract and assumption. He stood exactly in the place of the estate; he exercised the same means of defence which Madame Zacharie herself was entitled to oppose to M'Donogh's claim, and he succeeded. Suppose M'Donogh was to apply to the succession for the deficiency between the amount of the judgment and what he considered in July, 1829, to be the debt owing to him; could the succession set up the same claim against Theodore Zacharie who was bound to pay and hold it harmless against the debt? Surely not. If so, would not M'Donogh's rights, if transferred to Relf and Zacharie be affected and even destroyed by the judgment? Could he validly and effectually subrogate them to his rights? Could they enforce them against Theodore Zacharie? I think not; and it seems to me that, without attempting to decide that the judgment in question ought to have the force of *res judicata* in this case, it must be considered as sufficient to put M'Donogh in the actual impossibility of subrogating the defendants to the rights and securities which they would be entitled to,

EASTERN DIS.
July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH,
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

EASTERN DIS.
July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH,
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

on paying the amount in controversy; and this is the result or consequence of his own omission and neglect. The judgment would undoubtedly be a bar to a recovery against Theodore Zacharie who had obligated himself to pay *the whole debt;* as against any claim set up under M'Donogh's rights, he would successfully oppose the plea of payment under the decision of this court in his favor. It is clear that said judgment, rendered contradictorily with the creditor, would protect Theodore Zacharie against any action brought against him for the same cause, and would be considered as a judicial declaration that the debt by him assumed did not amount beyond the sum awarded; and this sum has been satisfied. *Touillier, vol.* 10, *Nos.* 202, 203, 204, 209 *and* 210.

But the defendant himself has recognized that the sum of *fifty two thousand and twenty-eight dollars and sixty-three cents,* constituted the whole amount of his claim. His notarial receipt given to James W. Zacharie on the 5th of September, 1834, (about two years before the institution of this suit,) declares positively that the amount of the bond *formed the balance due him on the sum of one hundred and thirteen thousand dollars,* secured by a special mortgage, &c., &c. Can he now gainsay the contents of his receipt? Is he not forever precluded from claiming any sum beyond the said balance? Was not the interest, if due, secured also by the mortgage which he released? And again, could Relf and Zacharie, on payment of this interest, be now subrogated with any effect to the creditor's said right of mortgage? Undoubtedly not. His receipt contains no reservation; it is absolute; he discharges all the mortgages which he had on the property, as also *all the reversions thereof,* that is to say: the assumptions successively made by Joseph Erwin, Madame Zacharie and Theodore Zacharie, to pay the Pemberton debt. The principal debtors are all thereby released, and the debt and mortgages are all extinguished. This, it seems to me, is the stronghold of the defence; it grows out of the very issue, set up by the defendants; and it is, in my opinion, so conclusive that, alone,

it would be sufficient to defeat the plaintiff's pretensions. I therefore think that the judgment appealed from ought not to be disturbed.

With regard to the claim of Relf and James W. Zacharie to the reimbursement of the sum of *eight thousand nine hundred and eighty-seven dollars,* as being the amount of the first note and which was paid, it has been shown that that sum had been credited on the principal debt previous to the institution of the suit against Theodore Zacharie. It is endorsed on one of the notes originally given by Pemberton, at the date of the 4th of April, 1830, and we must presume that it was accounted for in the liquidation of the balance due by Theodore Zacharie. There is no evidence that said sum was not included in the general settlement, and the defendants must have had a perfect knowledge of its application.

This being the opinion of the majority of the court; it is therefore ordered, adjudged and decreed that the judgment of the District Court be affirmed with costs.

*Morphy. J.* I fully concur in the foregoing opinion.

*Garland. J.* For the reasons stated in the opinion just delivered by Judge Simon, I am of opinion the judgment of the District Court ought to be affirmed with costs.

*Bullard, J. dissenting.*

I have not the good fortune to agree with a majority of the court, in the conclusion to which they have come, and I proceed very briefly to set forth the grounds of my dissent.

I assume in the first place, what will not be controverted, that the judgment of the Supreme Court in the case of M'Donogh vs. Zacharie; (5 La. Rep., 247,) has not in this case, and between these parties, the *authority of the thing adjudged.* And, secondly, that the notes in question were given for a consideration which renders them obligatory on the defendants, unless they show error originally when they were given; or a subsequent discharge or release. They were given by persons who stood in the relation of heirs or executors

Eastern Dis.
*July,* 1841.

RELF &
ZACHARIE
*vs.*
M'DONOGH,
AND
M'DONOGH
*vs.*
RELF &
ZACHARIE.

EASTERN DIS.
July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH,
AND
M'DONOGH
vs. .
RELF &
ZACHARIE.

of Madame Zacharie, who was personally liable for the whole of the Pemberton debt. They had personally a deep interest in the matter, in order to save the property in the family after having made large payments and to gain further time.

The notes included the whole balance of the Pemberton debt assumed by Madame Zacharie, with arrearages of interest, according to the terms of the contract, and interest added up to the time the notes were to fall due. The whole were blended together, without inquiring whether Pemberton could shelter himself from the payment of any part of the interest behind the mere verbiage of a notary, without inquiring whether authentic evidence of the release of a mortgage in the proper office, which is notice to the whole world, was not also notice to Pemberton. One of the notes was paid; that is to say, a part of the interest and a part of the principal. It will not be pretended that the notes were without consideration; and, in my opinion, the makers can escape from the payment of them only by showing that ₜthey were given in error; or that they have been since legally exonerated from their payment.

I. The judgment in the case of M'Donogh vs. Zacharie, does not show that error. Madame Zacharie never stipulated for personal notice to herself. She had paid large sums; twelve thousand dollars paid by her were imputed to the Pemberton note due in 1824, and more than eight thousand dollars to that due in 1825: Besides, when she purchased and assumed to pay Pemberton's debt, she must be presumed to have engaged to pay the interest as well as principal. According to the original contract the failure to give notice of the extinguishment of the mortgage, did not operate a forfeiture of the accruing interest. It only authorized Pemberton to suspend and refuse the payment; and we held unanimously in a very recent case, that the interest still runs in such a case, although not exigible. I leave to those who were members of the court at that period to speak of that judgment. It would not become me to say it was erroneous and not founded in sound principles. It is enough for my purpose that it is not in this case

*Bullard, J. and Martin, J., dissenting.— The failure to give notice of the extinguishment of a mortgage, did not forfeit accruing interest; it only authorized a suspension of the payment. Interest still runs in such a case, although not exigible.*

EASTERN DIS.
*July*, 1841.

RELF &
ZACHARIE
*vs.*
M'DONOGH,
AND
M'DONOGH
*vs.*
RELF &
ZACHARIE.

*res judicata ;* and therefore not conclusive as to the rights of the parties now before us.

The notice of release of mortgage was to be given before the payment in March, 1824. After that time upwards of twenty thousand dollars were paid, and on discovering at that time that Pemberton had not been notified, could she have recovered back any part either of the principal or interest? I think not, because being originally a stranger to the primitive contract she must be considered as having notice, not having required personal notice herself, and having paid according to the terms of her own contract as well as Pemberton's she must be regarded as having waived notice. She paid what was morally due, interest on the price of property producing revenues. She purchased also long before M'Donogh was obliged to give the notice to Pemberton; she assumed to pay his debt; that stipulation was accepted by M'Donogh; Pemberton was no longer interested in the contract; he was laid entirely aside. This was in 1821; and yet Madame Zacharie pretended that Pemberton was to have notice in 1824; and because he was not hunted up, after parting with all his interest, and formally notified of the release of the mortgage, she and her estate are to gain twenty-four thousand dollars.

It is said that the engagement of Relf and Zacharie to pay the debt of Madame Zacharie is the *pactum constitutæ pecuniæ.* Be it so. "If it be of the essence, says Pothier, of the *pactum constitutæ pecuniæ,* that there should be a pre-existing debt, it is only because it ought to have, for its object, a payment without which it would embrace a donation. Now in order that this pact should not contain a donation and that it should have a payment for its object, it suffices that the debt, the payment of which is promised, should be due, at least *in foro conscienciæ;* and that there should exist consequently a just subject for payment; although it may be *in foro legis* declared null by the civil law;" Pothier on obligations, vol. 2, page 369. Now I ask, was not Madame Zacharie bound in conscience to pay the interest as well as the principal? Was

If it be the essence of the *pactum constitutæ pecuniæ* that there sho'ld be a preexisting debt, it is only to avoid a donation; but it suffices if the debt, the payment of which is promised, should be due in *foro consciencæ;* and that there should exist a just subject for payment, although it may be in *foro legis* declared null.

EASTERN DIS.
July, 1841.

RELF &
ZACHARIE
vs.
M'DONOGH,
AND
M'DONOGH
vs.
RELF &
ZACHARIE.

there any conscience in setting up as an excuse for not pay-ing at all, that Pemberton had a right to suspend the payment, if notice was not given to him of the release of the mortgages? Admitting that upon mere technical grounds, *in apicibus juris*, M'Donogh could be deprived of a large amount of his interest which arose *ex morâ*, would any court, governed by principles of equity, have decreed him to refund it, if it had been paid. Even usurious interest paid cannot be recovered back. But she had paid after the time for giving notice had arrived; she did not insist upon the condition; a part at least of two install-ments of the Pemberton notes were paid. Was that not her construction of the contract? No lawyer would hazard his re-putation by suing to recover back for Madame Zacharie those payments, on the ground of a want of notice to Pemberton, when she alone had any interest in being informed of the dis-charge of the mortgages.

The agreement of M'Donogh, that on the payment of the notes given by the defendants, he would surrender to them the Pemberton notes, means nothing more, in my opinion, than that he would put it in their power to cause all mortgages to be raised. He reserved the right of proceeding on his original mortgage, but this means nothing more than that no novation was intended. The debt due by Relf and Zacharie was great-er than Pemberton's by the addition of interest; Relf and Zac-harie cannot now complain that the Pemberton notes have not been given to them; they prevented compliance with that agreement by not paying their own notes. M'Donogh reserv-ed the right to go upon the mortgaged property, but nothing shows any intention in that event to release the defendants.

II. I have had more difficulty on the question growing out of M'Donogh's discharge of the twelve months bond, than any other arising in the case. He admits by way of recital, it is true, that the amount of the bond, to wit: $52,000, was, *according to the judgment of the Supreme Court*, the balance due. He acknowledges to have received the amount of the bond, re-leases the mortgage and reversions of mortgages assumed by

Madame Zacharie.    Those expressions I do not understand and cannot give to them the effect of releasing Relf and Zacharie from the payment of their notes; their *pactum con-* *stitutæ pecuniæ*; because, in my opinion, they and Madame Zacharie and her heirs are bound in conscience to pay the whole interest as well as capital, notwithstanding the success of this technical defence.

If it be true, as taught by Pothier, that the *pactum consti-tutæ pecuniæ* be valid although the debt which forms the object of it, be not recoverable in strict law, I cannot understand how M'Donogh's acknowledgment, that he had received the amount of a twelve months bond, which according to the judgment of this court formed the balance due by Theodore Zacharie, could exonerate Relf and Zacharie from the payment of such part of their notes as would make up to M'Donogh, what they admitted was the balance due him.

My opinion is, the judgment should be reversed and judgment entered for the plaintiff.

MARTIN, *presiding judge;* concurred in the above opinion.