JOHN B. HEREFORD *v.* WILLIAM H. CHASE.

An accommodation endorser of a note is a mere surety for the maker; and a privity exists between such surety and the creditor which compels the latter to preserve unimpaired all his rights against the debtor, where he intends to look to the surety for payment. This obligation is a corollary of the right of subrogation, established by law in favor of the surety who pays the debt of his principal; and if the creditor fail to comply with this obligation, or destroy or impair the right of subrogation to his mortgages or privileges, the surety will be released.

The vendor of slaves, sold in a lump, received from the purchaser a note for the price, endorsed by a third person as surety for its payment, and subseqently purchased from his vendee a part of the slaves: *held*, that the vendor's privilege, and the surety's right of subrogation to it, were indivisible; that the latter existed entire as to all the slaves, for the full amount of the debt; and that it could not be divided and restricted to certain slaves, for certain amounts, at the will of the original vendor; and that by such re-purchase the endorser was discharged. Had the vendor repurchased all the slaves, his privilege would have been extinguished by confusion; and the subrogation to which the surety would be entitled on paying the price, would have become impossible.

APPEAL from the Commercial Court of New Orleans, *Watts* J.

MORPHY, J. This action is brought against the endorser of a promissory note of $6750, drawn by J. Desmont. The answer admits the endorsement, but denies that legal notice of the protest has been given to the defendant. It further avers that defendant endorsed this note as surety for the maker, to enable him to purchase a lot of ten slaves from the plaintiff; and that he is not liable

inasmuch as Hereford, who had the privilege of vendor on these slaves, entered into an arrangement with the said maker and vendee, by which, for the sum of $4675, he took back or repurchased of him nine out of the ten slaves, for which the note sued on was given, thereby depriving the defendant of the privilege of vendor on these slaves, to which he would have been subrogated in law but for the said agreement, composition, or resale between the plaintiff and the maker of the note. It is further averred that the debt has been fully paid and satisfied. There was a judgment below in favor of the plaintiff for $3458 50, from which the defendant has appealed.

The facts set forth in the answer are made out by the evidence in the case. It shows that on the 21st of February, 1837, the plaintiff sold to Desmont ten slaves for the price of $6750, and received the note sued on, which bore interest from its date at the rate of ten per cent per annum; that on the 11th of March, 1839, the plaintiff repurchased of Desmont nine of the same slaves, with the addition of a child born after the sale, for $4675. It does not appear whether the tenth slave died or remained in the possession of the vendee, nor is the relative value of the slaves shown.

It is clear that the defendant was an accommodation endorser, and as such merely a surety for the maker. It is equally clear that by the law of suretyship there is a privity between the surety of a debtor and the creditor, which compels the latter to preserve all his rights against the debtor unimpaired, when he intends to look to the surety for payment. This obligation on the part of the creditor is a corollary of the right of subrogation, which the law has established in favor of the surety who pays the debt of his principal. If the creditor fail to comply with this obligation, or does any act which destroys or impairs this right of subrogation to his mortgages or privileges, he thereby releases the surety. Civ. Code, art. 3030. Pothier on Oblig., part. 11, chap. 1, art. 6, sec. 2.

In the present case, if the plaintiff repurchased all the slaves, his privilege of vendor was extinguished by confusion; and the subrogation to which defendant was entitled on paying the price, became impossible by plaintiff's act. If the tenth slave, not mentioned in the reconveyance, is yet living in the possession of Desmont, of which there is no evidence in the record, the defendant's right of

subrogation has been materially impaired. It stands restricted by the act of plaintiff to a single slave, while he is decreed to pay $3458 50, with interest at the rate of ten per cent per annum from the date of the resale.  The ten slaves having been sold in a lump, the vendor's privilege, and consequently the defendant's right of subrogation to it, were indivisible ; it existed entire with regard to all of them for the full amount of the debt.  It could not, without his consent, be divided, and restricted to certain slaves, for certain amounts, at the will and pleasure of the plaintiff.  Were it otherwise, this right of subrogation, which, we believe, enters largely into the contemplation of all persons who become sureties for others, might be entirely done away with.  Cases might well occur, in which collusion between a vendor and vendee would render it entirely nugatory.  The course pursued by plaintiff has, in our opinion, released the endorser.

It is therefore ordered that the judgment of the Commercial Court be reversed, and that ours be for the defendant with costs in both courts.

*C. M. Jones,* for the plaintiff.

*L. Peirce,* for the appellant.