# ADLE v. METOYER.

A plea of payment will not preclude the defendant from subsequently pleading any act of the plaintiff, by which the debt may have been extinguished. *Per Curiam:* Courts of the first instance have full power to sanction such amendments of the pleadings, as they may deem conducive to the better administration of justice. The only positive rule they are bound to follow, is that contained in art. 420 of the Code of Practice.

Where a purchaser delivers to his vendor in payment of the price of the property bought, a note signed by himself and a third person binding themselves *in solido,* the contract between the vendor and such third person, is one of suretyship; nor will its character be changed by the fact that, after the note had been protested for non-payment, the latter executed a mortgage on his property, to secure its payment with interest. C. C. 3006, 3014. *Per Curiam:* The recognition of a debt must always be understood as relating to a primordial title; and if the recognition admits that the party making it is obliged further, or otherwise, than that title imports, by producing the title, and disclosing the error, he will be relieved.

Any agreement to give time to the principal debtor, by which the creditor precludes himself from the right of suing him, to the prejudice of the other parties to the contract, whether with or without consideration, will discharge the surety who has not assented to it. It is not necessary that the assent of the surety should be express; but the facts from which it may be implied must be such as to exclude every other hypothesis.

Where the holder of a note had notice, at the time of its transfer to him, that it was an accommodation note, subscribed by the maker for the exclusive benefit of the payee, the maker must be regarded as the surety of the latter.

APPEAL from the District Court of Natchitoches, *Greneaux* J.

*Tuomey,* for the plaintiff. Art. 3014 of the Civil Code declares that where the surety is bound *in solido* with the debtor, the effects of his engagement are to be regulated by the principles established for debtors *in solido.* Art. 3032 applies only to ordinary sureties. A question similar to that presented by this case arose in the case of *Aston* v. *Morgan,* 2 Mart. 354, and the court held that the party was bound as a principal, and *in solido.* In *Dussuau et al.* v. *Rilieux,* 9 Mart. 321, which was a suit against a surety on an appeal bond, the court held that, where the surety bound himself jointly and severally, the plaintiff could exercise all his rights against all the debtors, until the money was actually made. See also *Etsberger* v. *Menard,* 11 Mart., 436. Where de-

fendant bound himself jointly and severally, held that, he bound himself as a principal, and could not avail himself of exceptions, which the law grants to sureties alone. *Williams* v. *Brent*, 7 Mart. N. S. 205, is a strong case. It was a suit against a party who had signed a note *in solido*, though he did so for the benefit of one of his co-obligors, and the court recognized the doctrine that, though as to the obligee, the parties were bound *in solido*, yet, as between themselves, they were sureties. It results from the reasoning of the court in this, and the other cases cited that, though as between the obligors themselves, the relations of principal and surety may exist, yet, as regards the creditors, they are simple debtors *in solido*, and must be treated as such. In a subsequent part of the opinion in the same case, the court (Porter, J.) say: "This is an action against one of several debtors, bound *in solido*, or jointly and severally; and in regard to persons so bound, it is a well settled principle in our jurisprudence that, judgment against one is no bar to recovery against another; that nothing but actual satisfaction from one of the debtors, will prevent judgment and execution against the person legally bound with him." *Ibid.* p. 210. In the late case of *Smith, Administrator* v. *Scott et al.*, 3 Robinson 259, it was expressly declared by the court that, the effect of the engagement of a surety, who bound himself *in solido*, was "to be regulated by the same principles which are by law established for debtors *in solido*." And it was accordingly ruled that the affidavit made by *Scott*, the principal debtor, could not enure to the benefit of his co-defendant.

It is settled law that the surety *in solido* cannot claim the benefit of discussion. Civil Code, art. 3014. *Pothier*, Oblig. 408. And it seems to be well settled by the whole current of authorities that, the surety *in solido* is not entitled to avail himself of the exceptions and defences which are allowed by law to ordinary sureties. The French authorities throw but very little light upon the true meaning of art. 3032 of our Code, for the French law on the subject is that, the simple prolongation of the term granted to the principal debtor, does not discharge the surety. Code Napoleon, art. 2039. See *Toullier*, vol. 6, no. 728, *et seq.*, and no. 734, where he says that when the affair for which the debt was contracted concerns only one of the co-obligors, the effect will be such as we contend for. *Duranton* also says that, the obligations of sureties *in solido* are regulated by the law in relation to co-debtors *in solido*; they are to be considered as debtors *in solido*, and nothing else. Vol, 18, nos. 331, 332. Pothier, (Evan's ed. 1808, pp. 147 and 165, nos. 264 and 282, vol. 1) shows clearly that, if a debt, contracted by several *in solido*, concern one only, yet, to the creditor, they are all principal debtors; and our own Code states that, as solidarity must be expressly contracted, its remission must also be express.

The act of the 29th May, 1837, by which *J. B. L. Metoyer* mortgaged his property for the payment of the debt, was a new obligation, distinct and separate from the obligation arising from his signature to the notes previously executed? The first was a personal obligation by notes; the second, made subsequently, after the protest of one of the notes, was a hypothecary obligation to secure the payment of the debt; and if the heir of *J. B. L. Metoyer* can escape from the personal liability arising from the suretyship, if such it be, on the notes, does it follow that the property subsequently mortgaged must be discharged, for the same reason, from its liability? A man may give a mortgage on his property for the debt of another, and it will be good though the principal debt be rescinded by any plea personal to the principal debtor, as infancy or coverture. Civil Code, arts. 3263 *et seq.*

*Sherburne* and *J. B. Smith*, for the appellant. The engagements of *cautions solidaires* are assimilated by art. 3014 of the Civil Code to those of debtors *in solido*; but their rights as sureties are preserved, though their liabilities are made co-extensive with those of debtors *in solido*. *Bousquet*, (Dict. des Obligations) in his annotations on art. 2037 of the Code Nap. (Civil Code, art. 3030) says : " Tant qu, à la question de savoir si l'art. 2037 s'applique à la caution solidaire, comme à la caution simple, elle a été affirmativement résolue par plusieurs cours royales, et par la Cour de Cassation qui a décidé que lorsqu'il est constant qu'une administration publique, celle des Douanes, créancière pour des droits d'un contribuable, a suspendu pendant longtemps les poursuites qu'elle avait dirigées contre lui, et a laissé ainsi la fortune de son débiteur se dissiper sans faire un acte conservatoire, cette administration ne peut plus agir utilement contre la caution de son débiteur quoique la caution fut solidaire." L'art. 2037, recoit ici son application. Voyez en outre un arret de la Cour de Cassation 29 Mai, 1838. (17 Août, 1836, Dalloz, 36–1 421). He farther says, "*Verbo* Cautionnement : La décharge du cautionnement a lieu pour la caution solidaire comme pour la caution ordinaire, lorsque le créancier s'est mis par son fait dans l'impossibilité de subroger la caution à ses droits, privilèges et hypothèques." Pothier holds the same doctrine, Obligations, no. 557,. In the case of *Hereford v. Chase*, 1 Robinson 213, this court held that the defendant, being an accommodation endorser, was nothing else but the principal debtor's surety, and as such was discharged, the creditor having rendered it impossible for him to transfer his rights of privilege to him. See Manuel de Droit Français, art. 2037.

The defendant is discharged by the prolongation of time granted to the principal debtor,   Civ. Code, art. 3032.  5 Rob. 250.

The judgment of the court was pronounced by

ROST, J.   The first questions to which our attention is called in this case, are presented by a bill of exceptions, taken by the plaintiff's counsel to the opinion of the court admitting an amended answer to be filed. The grounds upon which it rests are : *first*, that the amendment changed the issue ; *secondly*, that the plea of payment contained in the original answer, precluded any other defence.

We think with the judge of the first instance that the issue was not changed, and the arbitrary rule of practice contended for by the plaintiff's counsel, is not recognized by this court. A plea of payment may be a waiver of the general issue, but it does not preclude the defendant from pleading any act of the plaintiff by which the debt may have been extinguished. Courts of the first instance have full power to sanction such amendments in the pleadings as they may deem conducive to the better administration of justice. *Debuys et al* v. *Mollere*, 2 Mart. N. S. p. 625. The only positive rule they are bound to follow, is that contained in art. 420 of the Code of Practice. The defence set up in the amended answer put at issue the real merits of this case, and the court, in allowing it to be filed, so far from violating any law or settled rule of practice, exercised, with commendable sagacity, the discretion with which it is vested. Those exceptions were properly overruled.

It is material to a proper understanding of this case that the facts it discloses should be stated in the order of their dates. On the 16th of February, 1837, *Auguste Metoyer*, a free man of color, purchased from the plaintiff a tract of land and fifteen slaves, for the price of $50,000, and gave him in payment three notes to his order, signed by himself and *Jean Baptiste Louis Metoyer, in solido,*

these notes being each for one third of the amount, and payable respectively on the first of May, 1837, on the 31st of March, 1838, and 31st March, 1839. The first note was protested for non-payment, on the 4th of May, 1837. An order of seizure was obtained by the plaintiff, and, on the 29th of the same month of May, the makers of the note appeared before a notary public, and, after reciting in a deed the fact, terms, and conditions of the purchase, bound themselves to pay interest on the price at the rate of ten per cent per annum, and mortgaged separately their property to secure the payment of their notes, of the interest, and of the costs incurred by the protest and by the seizure. The note given for the second instalment was protested for non-payment, on the 3d of April, 1838. On the 31st of May of the same year, the plaintiff became owner, by a notarial transfer and subrogation from *Charles Noyret*, of a note of $8784 60, signed by *Auguste Metoyer* and *Augustin Metoyer in solido*, and of another note, made by *Jean Baptiste Louis Metoyer* to the order of *Auguste Metoyer*, and by him endorsed, for the sum of $7320 50, to the knowledge of the plaintiff at the time of the transfer. This last note had been made by *Jean Baptiste Louis Metoyer* for the accommodation of *Auguste Metoyer*, who had received the value thereof in slaves. Two days before the transfer these notes had been secured by a mortgage given by *Auguste*, and *Jean Baptiste Louis Metoyer*, to *Charles Noyret*, on the plantation purchased from the plaintiff, and on all the other property mortgaged by them to the said plaintiff on the 29th day of May, 1837, as already stated. The plaintiff was one of the subscribing witnesses to this act of mortgage.

On the 4th of June, 1838, the plaintiff applied to the court for an order of seizure against all the property mortgaged to him by *Auguste*, and *Jean Baptiste Louis Metoyer*, to satisfy the above mentioned five notes and interest, less the sum of seven hundred dollars paid him on account. The order was granted against *Auguste Metoyer*, but withheld so far as the other defendant was concerned, until a partition could be effected between him and his mother, who owned the property mortgaged in common with him. *Auguste Metoyer* enjoined the seizure. The petition in the injunction suit was served on the plaintiff, on the 14th of September, 1838; on the 30th of that month *Jean Baptiste Louis Metoyer* died, after a continued illness of one month.

At the ensuing November term of the court, the plaintiff moved to dissolve the injunction with twenty per cent damages. The motion was opposed by the defendant, and the case stood over to the April term, 1839. At that term the injunction was dissolved by consent without damages, the petition was dismissed, and a new suit filed against *Auguste Metoyer*, in which a consent decree was entered in favor of the plaintiff. For divers valuable considerations, it gave a delay of from one to five years for the payment of the debt and interest, on the express condition that if any of the instalments were not punctually paid at maturity, the whole amount of the judgment should, *ipso facto*, become due and demandable. The first instalment was a sum of $20,000, to be paid on the 1st of May, 1839. The defendant failed to make payment on the day fixed, and forfeited thereby his right to the delays stipulated in the judgment. On the 11th of May, however, he paid the plaintiff, through *Auguste Metoyer*, $10,000; and the plaintiff agreed with him in writing that, if he paid the balance of the instalment and interest thereon within sixty days from that date, he, the defendant, should be entitled, for the other instalments, to the delays granted by the judgment, as if no forfeiture had taken place. This balance was paid, and,

33

ADLE
v.
METOYER.

under a second written agreement, no further claim was made upon the defendant, till after the second instalment became due. On the 6th of May, 1840, after the second instalment had matured, execution issued against the defendant. He applied for, and obtained a second injunction, which, on motion of the plaintiff was dissolved, with damages, on the 28th day of April, 1842. Several executions were subsequently issued, and, after exhausting all the property of *Auguste Metoyer*, there remained due by him a large balance, for the recovery of which this action has been instituted against the present defendant, who is the only son and heir of *Jean Baptiste Louis Metoyer*.

The defendant resists the claim on the ground that, his ancestor was the surety of *Auguste Metoyer*; that an extension of time was granted by the plaintiff to the original debtor, without his consent or that of his father; and that he is thereby discharged, under the provision of article 3032 of the Civil Code. Judgment was rendered in favor of the plaintiff in the first instance, and the defendant appealed.

The appellee contends that the judgment ought to be affirmed for this:

1st. That the liability of the defendant's ancestor is not that of a surety, but of a co-debtor *in solido*, and that he cannot avail himself of the defences which the law allows to ordinary sureties.

2d. That, if his liability was originally that of a surety, after the execution of the notes and the protest of one of them, he acknowledged the debt, gave a mortgage to secure the payment of it, and thereby contracted a new obligation.

3d. That if the defendant's ancestor is to be held as a surety, he expressly gave his assent to the indulgences and delays, granted by the plaintiff to *Auguste Metoyer*.

After the repeated decisions of the late Supreme Court, and of this on the questions presented by the two first points, we consider those questions as no longer open for argument. The rule is undoubted that, although the contract of suretyship, or any other, may be modified by private agreement, and made to assume various forms, when, in point of fact, the contract is one of surety between the original parties, the law holds them to the principles of that contract. *Andrews and others* v. *The State Treasurer*, 4 La. 406. *McDonogh* v. *Relf and Zacharie*, 19 La. 100. *Hereford* v. *Chase*, 1 Rob. 212. If the suretyship exceeds the debt, or is contracted on more onerous conditions, it must be reduced to the conditions of the principal obligation. Civil Code, arts. 3006, 3014. 2 Pardessus, Droit Commercial, no. 385. The relations of the original parties to bills or notes may be changed by parole evidence. Chitty on Bills, 81.

The original contract between the plaintiff and the defendant's ancestor was in reality one of suretyship, and the mortgage given by the latter, after the protest of the first note, did not change its character. We concur with the late Supreme Court in the case of *McDonogh* v. *Relf and Zacharie*, already cited, and adopt with them the doctrine of Pothier, "that the recognition of a debt is always to be understood as relating to a primordial title; and that, if the recognition admits that the party making it is obliged further, or otherwise that the primordial title imports, by producing the title, or showing the error, he will be relieved." Pothier, Obligations, No. 744. The mortgage given by the defendant's ancestor was a new contract of real suretyship, so far as the note endorsed by *Augustin Metoyer* was concerned. It created no new personal obligation on him.

We have already stated that the term granted by the contract to the original

debtor, *Auguste Metoyer*, was twice prolonged by the plaintiff; and the decision of this case turns upon the question, whether those prolongations took place with the consent of the defendant's ancestor. It is well settled that there is no obligation of active diligence on the part of the holder to sue the principal debtor, or any other party to the bill or note. He may be passive, and forbear to sue as long as he pleases; but he must not so agree to give time to the principal debtor as to preclude himself from suing him, and suspend his remedy against him to the prejudice of the other parties to the contract. *Huie* v. *Bailey*, 16 La. 213. *Frazier et al.* v. *Dick et al.*, 5 Rob. 250. It was further held in those cases, under the recent English authorities, that to make any agreement for indulgence obligatory, it must be for an adequate consideration; but in the case of *Mouton* v. *Noble et al.*, lately determined in the eastern district, *ante* p. 192, we overruled that part of the decisions, and returned to the old opinion that, under the dispositions of our Code and the general principles of the civil law from which they are derived, any agreement to give time to the principal debtor, with or without consideration, discharges the surety who does not assent to it.

It was correctly held in the case last cited from 5 Rob. that, the express assent of the surety is not necessary to bind him. Assent to contracts, which the law does not require to be made in writing, may be, and is, implied, when it is manifested by actions, by silence, or by inaction, in cases in which they can from circumstances be supposed to mean an assent; but the facts and circumstances from which alone assent may be implied, must be such as to exclude every other hypothesis. The express assent of *Jean Baptiste Louis Metoyer* to the particular stays and delays given by the plaintiff to *Auguste Metoyer*, is not shown; and we are called upon to determine, whether the facts and circumstances exhibited by the record exclude any other hypothesis but that of assent on his part. One single witness testifies to that part of the case. He says that, in May, or June, 1837, or 1838, or thereabouts, he saw *Jean Baptiste Louis Metoyer* twice on this business, and was requested by him to intercede with the plaintiff to grant him time; that owing to the solicitations of the witness, the plaintiff gave *Auguste Metoyer* time for several years; that the agreement granting five years was entered into at the joint solicitation of *Auguste*, and *Jean Baptiste Louis Metoyer*; that when the order of seizure was obtained, *Jean Baptiste Louis Metoyer* talked to witness about it, and it was then that he solicited witness to obtain time for him from the plaintiff. The agreement alluded to by the witness, took place in January, during the pendency of the injunction suit.

This is all the evidence of the alleged assent, under which the plaintiff claims the affirmance of a judgment now amounting to upwards of $30,000 dollars. The testimony of this witness is vague and uncertain, and induces us to believe that he had no distinct recollection of dates or facts. *Auguste Metoyer* positively swears that the prospective agreement of which he speaks, never took place, and the other facts of the case go far to show the truth of that declaration. The order of seizure, of which that witness speaks, was obtained on the 4th of June, 1838; it was enjoined, and the service of the petition was made upon the plaintiff, on the 14th of September following. *Jean Baptiste Louis Metoyer* had then been sick for two weeks, and died a few days afterwards. The witness was not seen at his house during his illness. Five or six weeks after the death of *Jean Baptiste Louis Metoyer*, at the November term of the court, the plaintiff, prosecuting his action with unabated vigor, filed a motion to dissolve

the injunction, with twenty per cent damages. This motion was resisted by *Auguste Metoyer*, and the case continued. Towards the close of the April term in 1839, the consent decree, granting time to the defendant, was entered. These facts negative the existence of any prospective agreement to which *Jean Baptiste Louis Metoyer* could have been a party ; but if such an agreement was proved by legal and sufficient evidence, the case of the plaintiff would not be made out. The first instalment due under the consent decree, was not paid on the day fixed, and the defendant's right to the delays granted was forfeited thereby. Eleven days after the maturity the *plaintiff* received a part of the instalment, and agreed that, if the balance of it was paid within sixty days of that date, the consent decree should remain valid notwithstanding the forfeiture. That payment was made, and the defendant had the benefit of the prolongation of the term till the maturity of the next instalment.

Surely it cannot be contended that *Jean Baptiste Louis Metoyer* foresaw this new arrangement, and assented to it. He had been dead nearly a year before the occurrence of the facts which gave rise to it; and the defendant in the present suit was the only person who could at that time have assented to it. It is not pretended that he did, and we are bound to hold him discharged from his ancestor's liability.

*Jean Baptiste Louis Metoyer* was the maker of the note of $7320 50, transferred to the plaintiff by *Noyret*; but it is proved that, at the time of the transfer, the plaintiff had notice that it was an accommodation note, subscribed for the exclusive benefit of *Auguste Metoyer*. It is therefore in the same situation as the others.

For the reasons assigned it is ordered that the judgment be reversed, and that there be judgment in favor of the defendant, with costs in both courts.