Bouldin, J.
delivered the opinion of the court.
Ve will consider the questions arising in this case, in the_ order in which they have been presented: noticing, first, the errors assigned in the petition for an appeal; secondly, those assigned in the appellant’s brief; and lastly, the errors assigned by the appellees.
The first, second and fifth errors relied on in the petition for appeal, have been waived by the appellants, and need not, therefore, be further considered.
The subject of the third assignment of errors is the charge against the appellant Strother of $230, being the estimated value of certain household furniture belonging to his decedent’s estate, which wás retained by him to his own use, without sale or appraisement. "We think there was no error in this charge. It is certainly true that this property, or the greater part thereof, was destroyed in the year when the appellant Strother’s house was consumed by fire; but it is also true that when destroyed, it must in law be considered to have been Strother’s property. It had been held and used by him *662 down to that time, for his own use and benefit, as part of the furniture of his house, and not for the benefit of testator’s estate. True, a portion of the family of testator lived with him as members of his family; but they lived with him as regular boarders, were charged as such, with a fair and reasonable board ; and certainly should not, when thus paying board, be expected to aid in furnishing the house. . Besides, the appellant- Strother himself, admits in his answer that he is responsible for the value of that furniture; that it is properly chargeable to him; and the real controversy in the court below, was not as to his liability, but as to the amount and value of the furniture. To that point chiefly were the proofs in the court below directed, and the value was fixed by the commissioner at $230. This sum is less than the estimated value of the property by the testimony in the cause, except that of Strother himself, and about fifty dollars less than its appraised value when retained by Air. Sheffey, the executor, as appears from the appraisement. Under such circumstances we cannot regard the charge as excessive; and the exception thereto was' properly overruled.
The fourth error assigned is, that it was improper and illegal to charge the appellant Strother with compound interest in the various accounts: That he was acting as personal representative of the testator Hull, and there, was no reason in this case to depart from the usual and well established principle on which such accounts are stated.
There can be no doubt, as a general rule, that executors and administrators are not to be charged with compound interest; but it is as well established that this general rule will be modified when required by the nature of the trust or the express terms of the will. "When the beneficiaries are minors, and accumulation for their *663 benefit is the ruling intention of the will, compound in-. terest will be charged, whether the fiduciary be an executor or guardian. He will be treated as having done what it was his duty to do, and his accounts' will be set-tied as a guardian’s accounts. Garrett, ex’or, v. Carr & wife, &c., 1 Rob. R. 196; same case, 3 Leigh 407. In that case, 1 Rob. 213, Judge Allen referring to the case of Raphael v. Boehm, 11 Ves. R. 82, said, “the direction was to take an account against the executor (who was a trustee) with a computation of interest on all sums received by him while in his hands; and that the master do in such computation make halt-yearly rests. The obj ect of the direction was to charge compound interest. Lord Eldon remarks in that case, that •' where there is an express trust to make improvement of the money, if he will not houestiy endeavor to improve it, there is nothing wrong in considering that he has lent the money to himself, upon the same terms upon which he could have lent it to others; and as often as he ought to have 1 ent it, if it be principal, and as often as he ought to have received it and lent it to others, if the demand be interest, and interest upon interest.’ And in another place, ‘the court would shamefully desert its duty to infants by adopting a rule that an executor might keep money in his hands without being answerable as if he had accumulated.” And Judge Allen goes on to say: “ These remarks apply with great force to the case under consideration, where the estate was considerable,.the wards young, aud accumulation for their benefit the governing intention of the will.” This language of Judge Allen will apply with singular pertinency to the case before us, “where the estate was considerable, the wards, or beneficiaries, young, and accumulation for their benefit is the governing intention of the will.” The learned judge then cites a decision of Chancellor Kent, 1 John *664 Oh. R. 620, “who there held, that if an executor convert trust moneys to his own use, or employs them in his business or trade, he is chargeable with compound interest.”
We think .there is no material difference bel ween the will in this case, and that in the case of Garvett v. Carr: that under each alike, it was the duty of the executors to improve the'estate; accumulation for the benefit of minors being the “ governing intention of the will;” and that compound interest was properly charged in this case down to the 1st of January 1861; to which period the executor, as such, was required by the terms of the will, to keep the estate together for the common benefit of the testator’s children. Down to that date the account of the appellant, as administrator, was properly stated on the principle of a guardian’s account. His account as administrator should have been then closed, and his indebtedness as such to each legatee ascertained; and for the amounts thus ascertained, with simple interest only, ought his sureties as administrator to he held responsible, subject to such payments as may appear to have been thereafter made by him. But as th'e administrator continued to act as guardian de facto-oí a portion of the testator’s children, without any actual settlement of his account as administrator, he should be individually charged in his acounts with such children, with compound interest in each case until the determination of the assumed guardianship.
It is unnecessary to notice the sixth assignment of ei’ror.
The objection to the decree of the court set forth in the seventh assignment of error is obviously well founded. The court in entering the final decree, after giving to each child all he was entitled to under the accounts as corrected' and approved by the court, inad *665 vei'tently added to each the sum of $735.42 6-7 cents, being amount of each distributive share on Mary O. Hull’s estate, already included in the sevei’al accounts. This error is obvious on the face of the decree, and is conceded by the appellees’ counsel; but it is contended that the mistake is one which could have been corrected in the court below by motion, under the 5th section of ch. 181, of the Code, p. 743; and therefore, thatpt is not the subject of an appeal. It is clearly an error coming within the purview of that statute; and were it the only error, this court w'ould either dismiss the appeal as improvidently awarded, or correct and affirm the decree, with costs to the appellees. But as it will appear in the sequel, that there are other errors in the record, for the correction of which it will be necessary to send the case back to the]court below, it is proper that this error should be noticed.
"We come now to the errors assigned in the appellant’s brief; the fir..t of wdiich is, that Mary O. Hull, one of the legatees, died a minor, and that the personal representative was not before the court. It was certainly irregular to proceed to the distribution of the estate of Mary C. Hull dee’d, although she died a minor, intestate and unmarried, without bringing her personal representative before the court; but in this ease that would have been the merest matter of form. All the parties beneficially interested in the estate were before the court; and as it was not pretended that there were outstanding debts to collect or to pay, other than the estate in the hands of the appellant Strother, it was certainly more simple and less expensive to proceed, as has been done in this case, and no one could possibly be injured thereby. The court, therefore, would not, if no other error existed, reverse and send back the cause for this mere error of form relied on in this court for the first *666 time; but as the case will, for other reasons, be sent back to the Circuit court, the personal representative of Mary C. Hull will be there made a party, if insisted on by the appellant Strother.
The court is further of opinion, that it was error to charge the appellant Strother -with .the rents of the home place. It is very obvious from the testator’s will, that it was his ruling interest and earliest wish that his younger children should be reared and trained under home influences; and to effect that object he provided that bis eldest daughter, so soon as she should marry, should have the use of his home farm on condition of “ her hiking special care of the family, as members of- her family.” "We understand by this, that the testator merely intended that the eldest daughter should extend to her younger brothers and sisters, as members of- her own family, the affectionate care and training of a mother; that so far as she was able she was to be a mother to them. He certainly did not intend, could not have intended, that this labor of love imposed on his daughter, should be a grave- pecuniary burden on her future husband ; and thus have a tendency to defeat his cherished wishes. On the contrary, he plainly and providently intended to make it to the interest of his future son-in-law, to gratify this natural desire of an affectionate -parent, by departing in that particular instance, from the general scheme of his will, and making to his eldest daughter, immediately on her marriage, a liberal advancement on the condition named. The advancement made was appropriate to the testator’s purpose. The eldest daughter was to have on her marriage the home place, there to keep around her the younger members of the family, andina home circle to extendió them the tender and affectionate care of an elder sister; second only to the watchful solicitude of a mother’s love. This price *667 less boon the testator designed to secure to his orphan ° . . . children, not by imposing on his future son-in-law a heavy pecuniary burden which would certainly tend to defeat his object; but through his wife to confer on him, a substantial benefit. That he regarded it a decided benefit is evident from the discretion vested in his executor to terminate the arrangement whenever ho might think it proper to charge more for the farm. Such a provision would have been simply absurd, had the testator already provided in his will, that his son-in-law, by boarding his family of children, should really pay about double the annual value of the farm; for such the board of the children has been proved to be. The testator, provident and affectionate as he appears to have been, certainly never intended that all the anxieties of the mother of a large family should be cast upon his young daughter, and about one-half the expense of subsisting his children should be imposed on his son-in-law, without the aid ox one cent from his estate. Yet such would be the practical result of the construction-contended for by the appellees ; the cost of boarding being about double the value of the farm. Our opinion is, that the home place was to be an advance to the testator’s eldest daughter on her marriage, free of charge, on condition that she should extend to her younger brothers and sisters the affectionate care of an elder sister as members of her family, at her own home, where they were in other respects to be supported by the estate. It has not been attempted to be shown by the testimony, nor has it been suggested in argument, that she failed in any respect, in the performance of this duty; on the contrary, it has been abundantly shown that the grave responsibility thus ' early cast upon her, was bravely met, and the sacred trust faithfully performed.
*668 ¥e think, therefore, that it was error to charge the appellant Strother with rent for $ie home place.
was error a^so to blend that portion of the proceeds of the Miller and Kesner lands, not paid over to I). D. and John Hull, with the general assets of the estate. These lands were specifically devised to D. D. and John Hull, and were sold under a decree of the court of Chancery in another suit, as the property of those devisees. The proceeds belonged not to the estate, hut to them, subject only to the duty of each on general division, to be accountable for any excess over his due proportion of the estate. The land was sold by the appellant Strother as commissioner of the court; and although ordered by the court in that case, to hold a portion of the proceeds, as assets of T. T. Hull’s estate, the proceeds were never properly in- the hands of the appellant Strother, as administrator, and constituted no part of the assets of the estate. But if they were, being proceeds of land, and not covered by the bond of the adminitrator in this, case, his sureties are not responsible for his administration of that fund ; but a separate account thereof should have been taken on the principles established by this court, at its present - term, in the case of Murphy’s adm’r & $ als. v. Carter & als., not yet reported. The bond of the representative was the same in that case, with that in this; and Judge Anderson, delivering the unanimous opinion of the court, says, of the sureties, “ they are responsible for the true and faithful administration of the personal fund. But that was mixed with the proceeds of the land sales; the testator by his will having blended both into one common fund for the payment of debts and legacies. And the sureties of the administrator are only bound for the true and faithful administration of so much of this common fund as was derived from the *669 personal estate. The administrator is clearly chargeable with the whole amount of his receipts, whether derived from land or personalty: but such is not the sponsibility of his sureties.” ITe then goes on to ascertain the principles on which the account, in such case, should be stated when payments have been made by the administrator out of the common fund, without designating from what source the payments were made ; and j lie holds that where “both funds were so mixed and blended that it cannot, with any certainty, be ascertained,” out of which fund payments were made, they should be applied ratably to both, in proportion to the amounts of each in the hands of the administrator. This rule, we think, a just and equitable one; that it should be applied to this ease, and the accounts should be reformed accordingly.
It is true that no exception raising this question was taken in the court below, nor has it been raised in this court; but the ei’ror being apparent on the face of the accounts, it is proper that it should be noticed and ■ corrected.
The 3d, 6th, 6th and7th points in the appellants’ brief have been already disposed of in considering the errors assigned in the petition.
‘The 4th objection to the decree is, to the charge against the administrator, of interest on the estate of Mary G. Hull, from the day of her death. ¥e think there was no error in the charge, under the circumstances of this case. This estate was a balance in the hands of the administrator, due and unpaid to Mary O. Hull at her death, and was then bearing interest. It was an interest bearing debt against the administrator; and there is no reason, under the circumstances of this case, why the amount of one year’s interest on his debt, or any part of it, should be remitted to him.
*670 This brings us to the errors assigned by the appellees, under the 9th rule of the court. The first is, that the court below erred- in allowing commissions to the administrator, he having wholly failed to settle his accounts, until compelled so to do by decree entered in this cause March 30th, 1867, about thirteen years after' his qualification.
The statute in force during the entire period of the transactions of this administrator, and applicable to personal representatives, provides that “any such fiduciary who shall wholly fail to lay before such commissioner a statement of receipts for any year, for six months after its expiration, shall have no compensation whatever for his services duriug the said year.” Code, ch. 132, § 8, p. 602.- There are some exceptions to the rule, set forth in the statute, but they have no application to the case before us, and need not be noticed. The forfeiture thus prescribed has been held by this court to be arbitrary and absolute; and, therefore, not under the control-of the courts. 6 Leigh 271; 3 Gratt. 113. But it has been argued, that the forfeiture should not be enforced in this case, because, by the amendatory act- of March 1, 1867, Bess. Acts 1866-7, ch. 279, p. 704, a discretion is allowed the courts to enforce the forfeiture or not; that the allowance of commissions is discretionary with the courts. Without enquiring whether» that amendment should be construed to have a retrospective operation—a construction not favored in law—it is enough to say that it was clearly intended to bo exercised in cases in which there should be some reasonable excuse for the delay; to cases in which, under all the circumstances, it should appear unjust and inequitable to exact, the forfeiture. Such is not the case before us. This administrator was not prevented from the discharge of this obvious duty, by accident, inadvertence, or other extenuating cause; but *671 the failure occurred from a deliberate purpose, on his part, formed and avowed, not to settle under the provisions of the will un’il compelled thereto by law. We , . . , . . . , “ . see nothing m such a-case to justity the court m exercising the discretion invoked, conceding it to exist; and we are of opinion that it was error to allow the administrator commissions on his transactions down to the 1st day .of January 1860. On all transactions subsequent to that date, he should, under the operation of the act of March 2, 1866, entitled “an act to preserve and extend th,o time for the exercise of certain civil rights and remedies, and of the seventh section of the stay law,” be allowed the usual commission; and on the land fund he should be allowed the commission prescribed by law for special commissioners making judicial sales, viz: 5 per cent on the first $300, and 2 per cent. on the residue.
The court is further of opinion, that there was no error in refusing to charge the administrator with damages done, or alleged to be done to the land of hi. J. Smith; nor .in refusing to charge him, as administrator, with the rents of that land whilst in possession. But the court is of opinion that the appellant Strother should be charged individually, in 1ns account with Mrs. 2ÑT. J. Smith, with such rents, he having withheld her land from her for his own use until compelled to surrender the same by order of court.
And finally, we think there was no error in adopting the valuation of the home place as set forth iu the report of Preston and others.
The decree of the Circuit court reversed, with costs to the appellants; and a decree entered in accordance with the principles above declared.-
The decree was as follows:
*672 The court is of opinion, for reasons stated in writing, and filed with the record, that the Circuit court did not err in charging the appellant Strother with the sum of $230.00 for the furniture of his testator, retained hy him; nor in charging him, in the same character, with compound interest down to the 1st of January, 1861, (after which time he is to he charged with like interest as guardian de facto, but not as administrator; and for such interest his sureties, as administrator, are not to be held responsible;) nor in charging him with interest on the amount due Mary C. Hull, dec’dj from the day of her death; nor in refusing to charge him, as administrator, with damages to the land of H. J. Smith; or with rent for the same; nor in adopting the valuation of the home place, reported by Preston and others.
But the court is further of opinion, that the Circuit court erred in the following particulars, to wit: in decreeing to the several legatees the sum of $735.42 6-7 each, in addition to the amounts reported in their several accounts, the same having been already included in said accounts; also, in charging the appellant with rent for the home farm; also, in blending the proceeds of the Miller and Kesner lands with the personal estate. These funds should have been kept separate, as the sureties are not responsible for the proceeds of the lands. Any unpaid balance of that fund -is an individual debt of the appellant Strother; and in ascertaining this balance, when payments have been made out of the blended fund, with no means of showing out of which they were made, they should be applied ratably to both, in proportion to the amount of each in the hands of the administrator.
The court is further of opinion, that there was error in allowing to the administrator commissions on the receipts of any year prior to the year ending the first *673 day of January, 1861; all compensation for his services for those years having been forfeited by his failure and refusal to settle his accounts according to law. For the year ending as aforesaid, and after that time he is to be allowed, under the operation of the stay law, the usual commission on his receipts; and on the proceeds of the Miller and Kesner lands he will be allowed the usual commission of a special commissioner, viz: 5 per cent. on the first $300 and 2 per cent, on the residue.
The coui't is further of opinion, that the appellant Strother should be charged individually with a reasonable rent for the land of 2ÑT. J. Smith, the same having been held by him for his own use, until compelled to surrender it by order of court, but not with damages. An account of these rents will be taken; against which the said appellant will be allowed to establish any payment or legitimate offset.
The court is further of opinion, (although in this case the merest matter of form;) that it was irregular to distribute the estate of Mary C. Hull, dec’d, without having her pei’sonal representative before the court, if required by the appellant; and should he now insist on it, such representative should be made a party.
It is therefore decreed and ordered that the said final decree of the Circuit court of Tazewell county, and all previous orders and decrees in conflict with this decree, be reversed and annulled, so far as they may conflict herewith; and that the cause be remanded to the said Ch'cuit court, to be further proceeded in, according to the principles of this decree.
And it is further decreed and ordered that the appellees do pay to the appellants their costs by them about their appeal in this behalf expended.
Decree reversed.